## Port Gibson Veneer & Box Co. v. Brown

No. 39807 December 12, 1955 83 So. 2d 757

*Henley, Jones & Woodliff*, Hazlehurst and Jackson, for appellant.

*Berger & Callon,* Natchez; *Joseph Davenport, Jr.,* Port Gibson, for appellee.

GILLESPIE, J.

Appellant contends that claimant failed to meet the burden of proof that his alleged injury was accidental and that his employment had causal connection therewith.

Claimant was a millwright in a veneer mill, engaged in repairing the conveyor trough. Sections of the trough weighing about 600 pounds were being replaced and welded. Claimant and a number of laborers lifted the section in place, after which claimant began welding while in a stooped position. He thought he had strained his back, and laid down for about two hours. Claimant continued to work but suffered from his back, and it subsequently developed that he had a condition known as spondylolisthesis, a slipping forward of one of the vertebra on the vertebra beneath. This condition alters the mechanics of the back and is characterized by low back pain with radiation of pain into one or both of the lower extremities. Treatment may be by use of a brace or an operation to accomplish fusion of the spine, and in claimant's case, the operation was performed after it was determined that a brace would not correct the condition.

We forego discussion of whether this condition, or abnormality, is always congenital, or congenital and developmental. The Commission was justified in finding from the medical proof that while claimant may have had an abnormal condition for years, when he handled the heavy trough, or subjected himself to strain, the small amount of tissue holding his vertebra in place gave way, resulting in a slipping of the vertebra; and claimant's physician was of the opinion that the work claimant was engaged in when the pain was experienced produced the disability. In other words, the abnormality was not brought about by his employment, but the slipping of the vertebra and resulting disability was probably produced by the strain of his work. The medical evidence showed that the abnormal condition of the spine here involved could have existed previously without pain or disability, because a small amount of tissue held the vertebra in position, but a strain could cause this inadequate tissue to give way and allow the vertebra to slip.

■■ But appellant says that since there were three disinterested witnesses who testified that claimant had experienced severe low back pain prior to the date of the alleged injury, and since claimant's medical expert based his opinion of causal connection on the hypothesis that claimant had not experienced previous low back pain, that the solution of this issue depends on whether claimant had had previous back pain. He proceeds further and says that the testimony of the three disinterested witnesses outweighs the testimony of claimant that he did not experience low back pain prior to the alleged injury. But that was an issue for the Commission to determine as the triers of fact. It cannot be said here that the finding of the Commission that the injury was accidental and that there was causal connection, was against the overwhelming weight of the testimony.

Appellant next contends that claimant failed to give notice of injury within thirty days as required by Code Section 6998-18.

■■ The only notice received by the employer was notice to claimant's immediate superior, his foreman. The foreman had timely notice of the injury. Notice to any superior is sufficient under the statute. Appellant says notice to the foreman should not be imputed to the employer in this case because (1) the foreman was claimant's step-father and the relationship was like unto that of father and son, and (2) the foreman had hired claimant without a medical examination because the foreman wanted claimant to stay at home, and (3) claimant lived in the foreman's home, and (4) claimant told his family physician a few days after the injury not to report the case to the employer (at which time the claimant did not know the seriousness of the injury, thinking it was only a nerve strain), and (5) claimant asked the foreman about turning in the claim to the employer, and the foreman said he did not think it would do any good, whereupon, claimant said at the hearing, "so we didn't turn it in."

██ ██ We have been cited to no case sustaining appellant's position. The law looks with disfavor on strained and technical interpretations of statutes regarding notice of injury; and even in cases where no timely notice was given, the tendency is to temper the literal harshness of statutory bars by the recognition of various excuses, and permitting waivers and exceptions. See Larson's Workmen's Compensation Law, Section 78.20, page 253. ██ ██ It is common knowledge that many workmen covered by the act know little of their rights and duties under the act; and we would be slow to engraft an exception on the statutory provision that notice of injury received by any superior is sufficient. ██ ██ The existence of a close personal and family relationship between the injured employee and his foreman is not in itself a sufficient circumstance to render nugatory notice received by such foreman. We hold that the commission was justified in finding the employer had timely notice of injury.

Appellant next contends that there is no liability for medical benefits. After the injury, claimant went to his family physician on his own responsibility, and was later referred by his physician to Dr. Moore of Vicksburg, who performed the operation. Claimant never requested medical services except that he twice asked his foreman about turning the claim in to the employer and was told by the foreman that he did not think it would do any good.

██ ██ From what we have said in reference to notice of injury to the effect that the close personal and family relationship between the claimant and foreman did not render nugatory the notice of injury that the foreman had received, it follows that the same rule applies to liability of the employer for medical services. The recent case of Pepper, et al v. Barrett, 82 So. 2d 580, forecloses this question in favor of claimant. ██ ██ It was held in that case that where a foreman had know-

ledge of an employee's injury and its disabling effects, it was the duty of the employer to instruct the appellee on what to do to obtain medical attention.

The final contention of appellant is that the proof shows that there had been no permanent reduction in claimant's earning capacity and therefore the Commission erred in finding that the claimant had a reduced earning capacity of $6.00 per week and awarding compensation accordingly. After February 28, 1953, the date of the injury, claimant continued to work and made considerable overtime until June of that year, although claimant was suffering during that period with his back. Claimant lost about four weeks time when he underwent the operation, and the Commission made an award of temporary total disability during this period. Claimant returned to work after the operation about August 4, 1953, at his regular rate of pay, 75¢ per hour, and in October 1953, his pay was raised to 90¢ per hour, and in December to $1.00 per hour. These increases were due to changes in jobs with the same employer. In January 1954, claimant was discharged for engaging in a fight with another employee, and it was not until this occurrence that claimant filed his claim for benefits. After being fired, claimant had difficulty in securing employment, claiming that employers did not want to hire him because of his back condition.

By agreement, a letter was inserted in the file after the hearing was concluded, showing that claimant was working for a well-drilling concern for $1.66 per hour.

The proof shows that after the injury claimant continued to have difficulty with his back, both before and after the operation, and there were times when he drew pay when he did not work, although the record is not specific as to the amount of such time when he was paid without working.

The operation was performed on claimant to correct the abnormal spinal condition, resulting in a fusing of

the spine. A graft was cut from the right hip bone and fixed between the vertebrae so that the result was that the fourth and fifth lumbar vertebrae and the sacrum were fused together in one piece. This stiffened the lower back and resulted in a limitation of movement of his spine. The fifth lumbar vertebra was still dislocated after the operation and the physician was of the opinion that there was some slipping of the vertebra, but would give no opinion as to the disabling effect of such slipping. Claimant was advised by the operating physician that under no conditions should he do any stooping or lifting for about seven months after the operation. The operation was performed on July 9, 1953, and that period of time extended to within about a month of the date of the hearing in this case, and it was during that period of time that claimant received two increases in wages. The physician estimated the claimant's permanent disability at fifteen percent, but admitted that he could not be exact in that regard. Claimant had reached maximum recovery at the time of the hearing.

We held in Karr v. Armstrong Tire and Rubber Co., et al, 216 Miss. 132, 61 So. 2d 789, that the fact that claimant was earning more after the injury than before was strong evidence that he had suffered no loss in earning capacity. But that case recognized that comparison of wages received before and after the injury is not the sole test. The test under the statute is to compare the average weekly wages before the injury with "his earning capacity thereafter in the same employment or otherwise." See Section 6998-09 (c) (21), Mississippi Code of 1942. In the Karr case, this Court quoted at length from Larson's Workmen's Compensation Law, Vol. 2, Sec. 57.21, page 4, on the question now under consideration. That case reversed the Commission's denial of compensation although the claimant's earnings had increased after the injury.

In the case at bar, the Commission found that claimant had suffered $6.00 loss in earning capacity,

and awarded compensation accordingly. We hold that the Commission was supported by the evidence, not on the basis of wages received before and after the injury, but on the other factors in the case. The Commission was justified in finding that (1) claimant had a permanently fused and stiff lower back with considerable limitation of movement forward, backward, sidewise, and rotary; (2) there was still some slipping of the vertebra; (3) one lumbar vertebra was permanently dislocated; (4) claimant's foreman was his stepfather and after the injury claimant was paid at times when he did not work; (5) claimant is a laborer and his job opportunities are limited to those requiring a sound body; and (6) a sufficient length of time had not elapsed between the attainment of maximum recovery and the hearing for the fixing of other than an arbitrary sum based on the best clues available to the Commission, and the sum fixed was close to the fifteen percent permanent disability estimated by the physician. We think all of these considerations were proper factors for the Commission's use in determining the amount of compensation, subject to the statutory provisions for a reconsideration of the degree of impairment upon application of any party in interest.

It may be said from a searching consideration of the whole record that there are grounds to doubt the validity of the claim; but this is true in many cases involving issues of fact, and the facts in this case were resolved in favor of the claimant by the Commission. We find no grounds upon which to hold that the Commission was not supported by the evidence.

Affirmed and remanded.

*McGehee,* C.J., and *Kyle, Arrington* and *Ethridge,* JJ., concur.