INGALLS SHIPBUILDING CORPORATION, et al. *v.* DICKERSON

No. 40351          February 4, 1957          92 So. 2d 354

*White & White,* Gulfport, for appellants.

*Donald W. Cumbest,* Pascagoula; *Travis & Moore,* Jackson, for appellee.

Holmes, J.

The appellee, L. D. Dickerson, filed a claim against his employer, Ingalls Shipbuilding Corporation, and the latter's insurance carrier, American Mutual Liability Insurance Company, appellants here, for compensation

benefits under the Mississippi Workmen's Compensation Law. The attorney-referee denied the claim. The commission, one member not participating, reversed the order of the attorney-referee and ordered the payment of disability and medical benefits. The action of the commission was affirmed by the circuit court and from the judgment of the circuit court, this appeal is prosecuted.

There is no substantial dispute between the parties as to the correctness of facts set forth in the attorney-referee's opinion. These facts are as follows:

For a number of years prior to February, 1955, the claimant had been employed as a carpenter by the Ingalls Shipbuilding Corporation. In February 1955, his average weekly wage was $82.80. In the performance of the duties of his employment, he was required to handle large timbers. On November 17, 1954, according to his testimony, he was engaged in the performance of his duties and it became necessary that one or more heavy pieces of timber be lifted several inches in order that a line from a gantry or crane could be placed thereunder. While so engaged, he became sick and notified the gantry operator of that fact. He did not notify his supervisor or leave the job at the time. Shortly thereafter, he was directed to dismantle some scaffolding. This work also involved the handling of large timbers. According to the testimony of the claimant, he again became ill while engaged in this work and reported to the first-aid station, where the nurse in charge gave him some medicine. After the completion of his shift, he returned to his home and later that night he suffered pain in the arms and chest and called Dr. G. W. Hicks. At the direction of Dr. Hicks he went to the company hospital where he was given some shots. The pain persisted and on November 19, 1954, he was admitted to the hospital where he remained for about ten days. He did not thereafter return to his work for approximately five weeks and upon his return he was given lighter work to do, and continued in

the performance of such work for about six weeks and then returned to his regular duties.

On February 21, 1955, he was directed by one of his superiors to assist other employees in placing some scaffold boards weighing about 150 to 200 pounds each upon scaffold benches approximately seven feet high. The boards were twelve inches by fourteen inches and twelve feet long. While engaged in this work, he again became ill. This occurred, according to his testimony, at approximately 10 P. M. on the shift that began at 3:45 P. M. and terminated at 12:15 A. M. The claimant did not report to first aid after this incident, but testified that he rested in an electrician's shack during the remainder of the shift. Thereafter, W. E. Little, the claimant's leaderman or supervisor on the shift, took the claimant in his car to within a short distance of his home. The claimant did not report the alleged illness or accident to Little and did not complain of pain.

At approximately 1:20 A. M., the claimant called Dr. Hicks and complained of pain in his arms and chest. He was taken to the hospital where shots were administered to him and he then returned to his son's home, but the pain persisted and he was thereafter admitted to the hospital where he remained for approximately nine weeks. After a period of two weeks spent at home, he returned to the hospital for an additional period of about five weeks. The claimant made no demand for compensation under the Mississippi Workmen's Compensation Law until September 16, 1955, on which date he forwarded his claim to the Workmen's Compensation Commission. The claimant was 48 years of age at the time of the hearing before the attorney-referee. The claimant was examined by Dr. Hicks in November 1954, and again in February 1955. He was also examined by Dr. T. T. Justice, a specialist in internal medicine, on February 25, 1955, at which time there was made an electrocardiagram of his heart. On October 27, 1955, he was examined by

Dr. E. F. Chanton, a specialist in internal medicine. On October 31, 1955, claimant was examined by Dr. K. D. Gregory, a specialist in internal medicine. All of the doctors agreed that the claimant had on at least two occasions suffered a coronary occlusion or posterior and anterior myocardial infarction.

The doctors differed in their opinion as to causal relationship between the attacks suffered by the claimant and his employment. Dr. Chanton, testifying for the claimant, stated that he saw the claimant on one occasion and that he was of the opinion that heavy labor such as the claimant was engaged in aggravated and precipitated the heart attacks and caused the disability. Dr. Gregory, testifying for the defendants, stated that he saw the claimant on one occasion and he was of the opinion that heavy labor such as the claimant was engaged in did not aggravate or precipitate the heart attacks. Dr. Justice, testifying for the defendants, stated that he saw the claimant shortly after the attack in February 1955, and that at that time the claimant gave him a history of pain in the chest and arms occurring while he was at rest at home, the claimant stating that the pain awakened him from sleep. The claimant testified that he continued to hurt from the time he left his place of work to the time he called the doctor. Based on the history given him by the claimant, Dr. Justice testified that in his opinion the attacks were not causally related to claimant's work.

The history of the attacks given by the claimant to Dr. Chanton and Dr. Gregory differed from the history related to Dr. Justice, in that the history on which Dr. Chanton based his opinion of casual relationship between the claimant's work and his attacks was one of onset of pain while performing his usual duties, while the history as related to Dr. Justice four days after the alleged injury of February 21, 1955, was of an onset of pain while asleep and sometime after completing the day's

duties. Both Dr. Gregory and Dr. Justice testified that the time element as to the onset of pain is important in determining causal relationship.

From the facts stated by the attorney-referee in his opinion, he made the following findings: (1) That on February 21, 1955, claimant, L. D. Dickerson, was employed by the defendant, Ingalls Shipbuilding Corporation, as a carpenter at an average weekly wage of $82.80; (2) that on or about February 21, 1955, claimant consulted Dr. G. W. Hicks in regard to pain in the arm and chest; that claimant was hospitalized for a period of approximately 15 weeks and is presently disabled from performing his usual duties as carpenter for the defendant-employer; (3) that on February 25, 1955, claimant was examined by Dr. T. T. Justice, a specialist in internal medicine, who found claimant had suffered a posterior and anterior myocardial infarction; (4) that claimant did not notify the employer of the alleged accident on February 21, 1955, nor demand compensation and medical treatment therefor until on or about September 16, 1955.

The record further reveals that while Dr. Hicks did not expressly testify that the claimant's work accelerated, aggravated, or precipitated his heart attacks, he did say that strain upon the heart would tend to aggravate an existing disease or precipitate a new one. Dr. Hicks further testified that when he saw the claimant in November 1954, he had the typical symptoms of a heart attack, that is, pain in the left chest, pain in the left arm, extreme apprehension and cold perspiration.

The evidence further reveals that when the claimant became ill while at work on February 21, 1955, he went to the company's first-aid station where he was attended by the company's nurse in charge, and that his condition was such that the nurse called the company ambulance to transport him to the hospital and thence to his home. Within a few days after he was admitted to

the hospital after the February 1955 attack, he was visited by his co-workers and among them was his foreman or superior.

The commission, in its order, recited that it was of the opinion that the statement of the case contained in the attorney-referee's opinion was true and correct and that the findings of facts of the attorney-referee Nos. 1, 2, 3 and 4 were correct. The order of the commission further recited that a majority of the commission were of the opinion that based upon the facts contained in the record and found by the attorney-referee, there was substantial evidence upon which an award should be made. It should be noted that the attorney-referee made no specific finding that there was not causal relationship between the claimant's attacks and his work. He expressed the opinion that there was insufficient evidence upon which to base a finding that the claimant suffered an accidental injury which arose out of and in the course of his employment.

The overwhelming weight of the evidence establishes the fact that the claimant's attacks came upon him while he was in the performance of the duties of his employment, and engaged in handling heavy timbers which caused physical strain and exertion. It is further undisputed from the evidence that he is at present disabled from the performance of the work in which he was engaged at the time he suffered his heart attacks. The main dispute in the evidence arises out of the medical testimony and pertains to the question of causal relationship between the claimant's work and his attacks. Dr. Chanton testified that the claimant's work, consisting of heavy labor, aggravated and precipitated the claimant's heart attacks and caused his disability. Dr. Hicks did not specifically express the opinion that the claimant's work aggravated and precipitated his heart attacks, but did say that where one is susceptible to such an attack any severe strain upon the heart would tend to aggravate

an existing disease or precipitate a new one. Dr. Gregory testified unqualifiedly that in his opinion there was no causal relationship between the claimant's work and his attacks. Dr. Justice based his opinion upon the assumption that the attacks came upon the claimant while at rest or asleep, and after an interval between the time that he quit work and the time of the attack. He stated, however, that "if there is an immediate relationship between severe pain or its equivalent in a patient who was known to have coronary artery disease, there may be a causal relationship."

It is mainly contended by the appellants on this appeal that the order of the attorney-referee is based upon substantial evidence and that the commission was, therefore, not warranted in reversing the order and decision of the attorney-referee. The appellants contend that the attorney-referee is the trier of the facts and not the commission, and that the decision of the attorney-referee, if supported by substantial evidence, is controlling on the commission. They admit that this contention is in direct conflict with the decision of this Court in Railway Express Agency, Inc. v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754, and Malley v. Over-the-Top, 90 So. 2d 678. They argue that these two cases are in conflict with the prior decisions of this Court, and particularly the decisions of this Court in Pearson v. Dixie Electric Power Association, 219 Miss. 884, 70 So. 2d 6, and Guess v. Southeastern Utilities Service Co., 85 So. 2d 173. They urge the Court to adopt the rule that the trier of facts in compensation cases is the attorney-referee. In the Pearson case and the Guess case, the Court expressed the opinion that the decision of the attorney-referee was supported by the great weight of the evidence and should not be reversed by the commission. It is manifest in both of these cases that the Court was of the opinion that there was not substantial evidence to support a decision of the commission contrary to that of

the attorney-referee, and the effect of the decisions in these cases was to so hold. It was not the holding of the Court in these cases that the attorney-referee is the trier of the facts and that his decision is not to be disturbed if supported by substantial evidence. Be that as it may, however, the question as to whether the attorney-referee or the commission is the trier of the facts in compensation cases has been definitely put to rest in the case of Railway Express Agency v. Hollingsworth, supra, and Malley v. Over-The-Top, supra. In both of these cases the Court announced the definite rule that the commission is the trier of facts and we now re-affirm that holding.

It is also contended by the appellants that since the commission adopted as correct the statement of facts contained in the opinion of the attorney-referee and adopted the findings of the attorney-referee it was error for the commission to reverse the decision of the attorney-referee. It is true that the commission adopted as correct the facts stated by the attorney-referee in his opinion and the findings of fact of the attorney-referee Nos. 1, 2, 3 and 4. As heretofore stated, the attorney-referee made no specific finding that the facts were insufficient to show causal relationship between the claimant's attacks and his work. However, the commission was not precluded from considering the facts stated by the attorney-referee as well as other facts appearing in evidence, and from the record as a whole determining whether or not there was causal relationship between the claimant's attacks and his work. So considering the case, the commission determined from the conflicting testimony that the claimant's injury was compensable. There is, in our opinion, substantial evidence to support the decision of the commission.

It is next contended that the commission reversed the findings made by the person who heard the witnesses and observed their demeanor, on the sole ground that there was evidence in the record in favor of the claimant

and held as a matter of law that this evidence must be believed by the triers of the facts to the exclusion of the testimony offered by the defendants, and the appellants argue that such an order by the commission was arbitrary, capricious, and unwarranted, and a denial to the defendants of their constitutional rights under the Constitution of the United States and the State of Mississippi. It is clear from the record that the commission did not hold as a matter of law that the evidence in the record in favor of the claimant must be believed by the trier of facts to the exclusion of the testimony offered by the defendants. The commission, considering the testimony as a whole and determining the conflicts therein, found that the claim was compensable and there was substantial evidence to support this finding and decision.

It is also contended by the appellants that the claimant is precluded from recovery because of his failure to give to his employer notice of his injury within the time prescribed by the act. The act expressly provides that absence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice. In the case of Pearl River Tung Co. v. John's Estate, 83 So. 2d 95, we held that where the employer's foreman in charge of the deceased drove the deceased to the hospital after a heart attack, the employer had actual knowledge of the injuries to the deceased within the meaning of the workmen's compensation statute. We also held in the case of Port Gibson Veneer and Box Co. v. Brown, 83 So. 2d 757, that under the compensation act requiring notice of injury within thirty days, notice to any superior of the employee is sufficient. It was also said in the case of Port Gibson Veneer and Box Co. v. Brown, supra, as follows:

"The law looks with disfavor on strained and technical interpretations of statutes regarding notice of injury; and even in cases ,where no timely notice was

given, the tendency is to temper the literal harshness of statutory bars by the recognition of various excuses, and permitting waivers and exceptions.''

██ ■ It is undisputed that within a few days after both attacks suffered by the claimant he was visited in the hospital by his co-workers, including his foreman, and further that he was treated in the first-aid station maintained by the employer for the benefit of injured employees, and was transported in the employer's ambulance to the hospital and from the hospital home. It is unreasonable to deduce from this evidence that the employer had no knowledge of the claimant's injury and of the fact that it was suffered in the course of his employment and was related to his work. It is clear from the record that the employer was not prejudiced by the claimant's failure to give notice. We therefore find that this contention of the appellants is untenable.

It follows from the views expressed that the judgment of the circuit court affirming the order of the commission and remanding the cause to the commission for enforcement should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Kyle,* JJ., concur.