MALONEY CONSTRUCTION COMPANY, et al. *v.* STRICKLAND.

No. 41240          October 19, 1959          114 So. 2d 851

*Watkins & Eager,* Jackson, for appellant.

*Pyles & Tucker,* Jackson, for appellee.

444

APPELLANT IN REPLY.

*Young, Daniel & Coker*, Jackson, Amicus Curiae.

APPELLANT IN REPLY.

Lee, J.

The claimant, Herbert V. Strickland, in a hearing before the attorney-referee for compensation benefits on account of an alleged disability sustained on November 29 or 30, 1954, was awarded against his employer, Maloney Construction Company and its insurer, General Accident Fire and Life Assurance Corporation, temporary total and thereafter permanent partial disability benefits. The Commission approved, and, on appeal, the circuit court affirmed. The employer and its insurer have appealed here.

The principal contention of the appellants is that the testimony of the appellee is unreasonable, incredible, without corroboration, and so impeached that it is insufficient on which to base an award.

At the time of the hearing, Strickland was 36 years of age, married, and had four children. Prior to 1947, when he became a member of the armed forces, he worked for Maloney Construction Company as the operator of a bull-

dozer. In the air force, at first he did road and bridge construction. Later he did electrical work. In 1949, in sliding down a pole, he sustained an injury to his back which was diagnosed as a strain. However after 47 days in the hospital, he recovered, returned to general duty, thereafter participated in baseball and basket ball, had no further trouble with his back, and was discharged as a hardship case in June 1951.

Following his discharge, Strickland worked for a year and a half as a truck driver for Independent Linen Service, with only a slight kidney trouble in 1952. In the first part of 1953 he went back to work for Maloney Construction Company as a heavy equipment operator, which was definitely considered to be hard labor. Weather conditions permitting, he worked 10 hours a day for 6 days in the week. On October 9, 1953, while lifting the clutch from a D-7 tractor, he received a back strain. After collecting compensation benefits for two weeks, and apparently fully recovered, he returned to work and performed the same duties thereafter without pain or discomforture.

According to Strickland, either on November 29 or 30, 1954, while working in a subdivision behind the Deaf and Dumb School in the City of Jackson, he pushed over a tree. The roots caught in the blade of the bulldozer, threw it upward, and, when it came down, it snatched his back, causing a knot to form in it. As a result he could hardly lift his foot. He parked the bulldozer and told P. J. Maloney, one of the partners, that he had hurt his back and would have to go to a doctor. Maloney gave his permission and the claimant first saw Dr. Kendall, who referred him to Dr. T. H. Blake. Dr. Blake made x-ray pictures and advised that he had found a spondylolisthesis, that is a slipping forward of a vertebra on the one beneath, and that an operation to fuse the bone would be necessary. Subsequently Strickland entered the Veterans Hospital on December 10, 1954, where the

operation was performed on March 11, 1955, with satis-
factory results, by Drs. Robertson and Spencer.

On December 23, 1954, P. J. Maloney, to whom Strick-
land reported his injury, made up and forwarded to the
Workmen's Compensation Commission Form B-3, which
is the employer's first report of industrial injury. Strick-
land was listed as a heavy equipment operator, injured
on November 29, 1954, while "operating Caterpillar D-7
Tractor". In answer to the question as to how the acci-
dent happened, he said "former back injury *aggreviated*
by operating tractor". His work and pay schedule was
shown to be six days a week with ten hours a day at $2.10
per hour. This report was received by the commission
and filed on December 30, 1954.

P. J. Maloney and his brother Pete, the two partners
in the company, and Lamar Robinson, their foreman, tes-
tified that Strickland came on the job Monday morning
November 29th and said that he waked up the night be-
fore with a pain and catch in his back. However, he
worked that day and did not go to the doctor until the
following day. P. J. admitted that he sent the accident
report to the commission, but said that he knew better
when he did it; that Strickland was not operating the
tractor when the alleged injury occurred; and that he
sent the report because he wanted to be fair to "Strick".
Pete admitted that they were pulling up brush, trees and
stumps on Monday; that there were two turn-arounds at
the end of the street on the Carraway job; and while he
did not recall whether it was necessary for Strickland to
push a tree down at that place, he would not say that
such was untrue. However, P. J. said that the trees were
pushed down on Saturday before. Robinson was not cer-
tain about the matter. Strickland denied that he told
these witnesses that he had trouble with his back on Sun-
day, and said definitely that the injury did not occur on
Monday.

Dr. Blake, who examined Strickland following his October 9, 1953, injury, testified that he found a narrowing of space between the last vertebra and the sacrum and advised an exploration and spinal fusion. Then he said "I believe I did" tell the patient. Strickland, on the other hand, said that the doctor did not tell him. Again, Dr. Blake testified that, in the history, Strickland waked up in the middle of the night with severe pain in the lower back and it was impossible for him to work the next day, and that he had no record that the claimant related a history of injury on November 29. On the contrary, Strickland said that he did not recall telling Dr. Blake that he had spells previously, and that the Doctor had twisted the history around to suit himself.

On the question of what constitutes material conflicts between a doctor and his patient compare Shivers v. Biloxi-Gulfport Daily Herald, (Miss.) 110 So. 2d 359.

In Port Gibson Veneer & Box Co. v. Brown, 226 Miss. 127, 83 So. 2d 757, it was contended that the evidence of three disinterested witnesses outweighed the testimony of the claimant. But the Court said that this "was an issue for the commission to determine as the triers of fact", and that such finding in favor of the claimant was not against the overwhelming weight of the evidence. The Court also made the following observation: "It may be said from a searching consideration of the whole record that there are grounds to doubt the validity of the claim; but this is true in many cases involving issues of fact, and the facts in this case were resolved in favor of the claimant by the commission." See also Thornbrough Well Servicing Co. v. Brown, 223 Miss. 322, 78 So. 2d 159. In the present case, it could hardly be said that the Maloneys and Robinson, the foreman, were disinterested.

According to Dr. Blake's testimony a spondylolisis is a pedicle defect on the spine and is usually congenital, whereas spondylolisthesis is a displacement of a vertebra.

Dr. Robertson was of the opinion that the spondylolisthesis had been present for some time, but that, if for a year prior to November 29, 1954, Strickland had no trouble with his back and then sustained the injury, as he testified, the back condition was aggravated thereby. Dr. Spencer's evidence was to the same effect.

While Dr. Blake had no history of the alleged injury on November 29 or 30, upon the assumption that Strickland did have such an injury at that time, he conceded that the condition of his back would be aggravated as a result.

██ █ Although the appellants reported the alleged injury, they neither paid compensation nor controverted the claim. Therefore, the penalty was properly imposed. Section 6998-19(e), Code of 1942 Rec.; Southern Engineering & Electric Co. v. Chester, 226 Miss. 136, 83 So. 2d 811; Smith v. Genette, 232 Miss. 166, 98 So. 455; Harris v. Suggs, 233 Miss. 533, 102 So. 2d 696.

██ █ The claim in this case was for a disability which arose as the result of an injury on November 29 or 30, 1954, not for an injury on October 9, 1953. Without deciding whether the commission, in a proper case, may compel contribution on the part of different insurers, it is sufficient to say that, in this case, the commission properly refused to do so.

From which it follows that this cause must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.