B. C. ROGERS & SONS, et al. *v.* REEVES

No. 40574          December 16, 1957          98 So. 2d 875

*Watkins & Eager, Shelby Rogers,* Jackson, for appellants.

*Pyles & Tucker,* Jackson, for appellee.

312

HOLMES, J.

This suit involves a claim of the appellee, Junior (J. B.) Reeves, against his employer, B. C. Rogers and Sons, and the latter's insurance carrier, Fidelity and Casualty

Company of New York, who are the appellants here, for compensation benefits including medical treatment under the provisions of the Mississippi Workmen's Compensation Act, as amended, Section 6998-01, et seq., Mississippi Code of 1942.

It was stipulated by the parties that the appellee was injured while in the course of and arising out of his employment on or about August 13, 1955; that the employer and carrier assumed responsibility under the Mississippi Workmen's Compensation Act and have made certain compensation payments from the date of said accident, August 13, 1955, to the date of the hearing, for approximately 29 weeks on a basis of an average weekly wage of $20 per week and a compensation rate of $13.34, for a total sum up to March 4, 1956, in compensation payments of $386.86; that certain medical payments have also been made for and on behalf of the claimant to attending physicians.

The appellee's initial injury resulted when in the course of his employment he dropped a block of ice weighing 30 to 35 pounds on his left foot. The injury occurred on August 13, 1955. The appellee reported the injury to his employer and was directed to report to the employer's physician, Dr. L. F. Wilkins. When he failed to respond to treatment, Dr. Wilkins referred him to Dr. W. C. Warner, an orthopedist of Jackson, Mississippi. Dr. Warner first saw him on August 31, 1955, at which time he complained only of his foot injury. Dr. Warner next saw him on September 14, 1955, at which time he complained of his foot injury and of pain in his lower back. Dr. Warner diagnosed his trouble as causalgia as a result of his foot injury and neuritis superimposed on his initial injury. He defined causalgia as hyperactive responses to sympathetic nerves. Dr. Warner discovered in consultation with the appellee that his lower teeth were infected. The appellee's upper teeth had been extracted several years previously and he wore upper false teeth.

The doctor was of the opinion that the infection in the appellee's lower teeth was causing the neuritis in the appellee's back, and was also accentuating or aggravating the pain and discomfort in his foot and leg. As a means of relieving the causalgia and also the neuritis in his back, the doctor recommended nerve blocks and also the removal of his lower teeth. Two nerve blocks were performed, and the appellee's lower teeth were extracted. The doctor testified that after appellee's lower teeth were extracted, he recovered from his neuritis and causalgia. Dr. Wilkins concurred in the findings and conclusions of Dr. Warner. Dr. J. W. Hudson, the dentist who extracted the teeth, and Dr. Warner concurred in the opinion that the appellee's lower teeth should be replaced by a plate of false teeth in order to enable him to properly masticate his food and as a means of contributing to his general health.

The employer maintained a work week for all of its employees beginning on Friday and closing on the following Wednesday afternoon. The plant was closed on Thursday and Sunday. All employees were paid weekly at the end of such work week. The appellee began his employment on Monday, which was the middle of a work week, and worked through the following Wednesday, which was the end of a work week, and for said period of service he was paid on the basis of 75¢ per hour, totaling the sum of $21.30. He went back to work on Friday, the beginning of a second work week, and worked until Saturday afternoon when he was injured, for which period of the second work week he was paid $12.67.

The appellants assumed responsibility for compensation payments to the appellee and paid him on the basis of an average weekly wage of $20.00, and a compensation rate of $13.34 per week, beginning on August 14, 1955, and continuing to the date of the hearing, for temporary total disability. No question is raised as to the degree of disability.

The appellee contends that he is entitled to have the appellants provide for him a lower set of false teeth to replace the teeth which were extracted, under the provisions of Section 6998-08, Vol. 5A, Recompiled, Mississippi Code of 1942.

The appellee further contends that he is entitled to compensation on the basis of an average weekly wage of 75¢ per hour for a forty hour week, and that on such basis he is entitled to compensation on the basis of an average weekly wage of $30.00, and a compensation rate of $20.00 per week.

The appellants contend that there is no causal relation between the appellee's initial injury and his infected teeth and that, therefore, they are under no liability to provided the appellee with a lower set of false teeth to replace the teeth which were extracted.

Th appellants further contend that the compensation payments to appellee should be based on the appellee's average earnings during the two work weeks, amounting to an average weekly wage of $20.00 and a compensation rate of $13.34.

After a full hearing, the attorney-referee found that on August 13, 1955, the date the appellee sustained his injury, he was employed by the appellants B. C. Rogers and Sons, at an average weekly wage of $30.00; that the appellee's injury was compensable under the Mississippi Workmen's Compensation Act; that as a result of the appellee's injury and as a part of the treatment therefor, his lower teeth were extracted; that the appellants have paid compensation for temporary total disability at the rate of $13.34 per week from August 14, 1955, to the date of the hearing; that the appellee has not yet attained maximum medical recovery. The attorney-referee then ordered that the appellants pay to the appellee compensation for temporary total disability at the rate of $20.00 per week from August 13, 1955, until such time as there is a change in the degree or character of the

appellee's disability not to exceed the maximum limits of the Mississippi Workmen's Compensation law as amended; that the appellants furnish all medical expenses as provided by Section 6998-08, Vol. 5A Recompiled, Mississippi Code of 1942, including the cost of a lower plate to replace the teeth extracted in the course of treatment of the appellee's injury; that the appellants receive credit against the amounts ordered to be paid for such amounts of voluntary compensation as had been previously paid to the appellee; that upon application of either party, additional hearings be held to determine the degree of temporary partial, permanent partial, or permanent total disability sustained by the appellee as a result of said injury. On a review by the full Commission, the findings and order of the attorney-referee were affirmed, and were likewise affirmed on appeal to the circuit court. From the judgment of the circuit court affirming the orders of the attorney-referee and the commission, the appellants prosecute this appeal.

■■ ■ It is, of course, too well settled under the decisions of this Court to require the citation of authorities that the pre-existing disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement, if the employment aggravated, accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. But we are not called upon in this case to determine whether the initial injury combined with the pre-existing infected condition of appellee's teeth to produce or contribute to his disability. Of course, it is certain that the injury to appellee's foot did not cause the infected condition of his teeth. It is likewise certain, however, under the undisputed proof in this cause, that causalgia resulted from the appellee's foot injury and that his lower teeth were extracted on the recommendation of the doctors as a part of the treatment for his injury and as a requirement in the process of his recovery.

Section 6998-08(a), Code of 1942, provides in part as follows: "The employer shall furnish such medical, surgical and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial limb, and other apparatus for such period as the nature of the injury or process of recovery may require."

We have held this statute to be mandatory in form. Pepper v. Barrett, 82 So. 2d 580. The appellants were therefore mandatorily required to furnish to the appellee treatment of his injury for such period as the nature of the injury or the process of recovery might require. The doctors, whose qualifications and professional reputations were not questioned, determined that the nature of appellee's injury and the process of his recovery required the extraction of his lower teeth and they recommended that such be done as a part of the treatment for the appellee's injury. The attorney-referee, the Commission, and the circuit court found that as a result of the appellee's injury and as a part of the treatment therefor, his lower teeth were extracted. This finding is not only supported by substantial evidence but by the undisputed testimony of the doctors. The appellants assumed responsibility for the cost of the extractions as a part of the treatment of the appellee's injury as recommended by the doctors, but declined to provide for the appellee a lower set of false teeth to replace the extracted teeth.

The appellants contend that the attorney-referee, the Commission, and the circuit court were in error in ordering the appellants to provide for the appellee a lower set of false teeth. We do not think so. Dr. J. W. Hudson, the dentist who extracted the teeth, and Dr. Warner testified without contradiction that in their opinion the appellee's lower teeth should be replaced by a plate of false teeth in order to enable him to properly masticate his food and as a means of contributing to his general health. The treatment was not complete, there-

fore, by merely extracting his teeth, but it was obviously necessary under the proof to provide him with a lower set of false teeth to avoid the harmful effects of leaving him without any lower teeth. We think it was not contemplated by the legislature in the enactment of said Section 6998-08(a) that the treatment required to be furnished by the employer should be so incomplete as to subject the employee to harmful effects; but rather, we think, it was the intention of the legislature that the employer complete the treatment required so as to restore the employee to the maximum usefulness that he can attain under his physical impairment. This, in our opinion, is the reasonable interpretation to be placed upon the statute and a contrary view would contravene the manifest purpose of the statute to require the employer to furnish treatment for such period as the nature of the injury and the process of recovery may require to the end that the employee may be restored to the maximum usefulness that he can attain under his physical impairment. This view is aptly expressed in Larson's Workmen's Compensation Law, Vol. 2, Sec. 61.20, as follows:

"Until comparatively recently, the industrial accident problem had two major phases: prevention and cure. The spotlight is now on a third: rehabilitation. The conviction is gradually gaining ground that the compensation job is not done when the immediate wound has been dressed and healed. There remains the task of restoring the man himself to the maximum usefulness that he can attain under his physical impairment."

We have accordingly reached the conclusion that the attorney-referee, the Commission, and the circuit court were not in error in requiring the appellants to provide for the appellee a lower set of false teeth to replace the teeth which were extracted.

The appellants cite as applicable the case of Horn v. Elm Branch Coal Company, et al. (Kansas), 41 Pac. 2d 751, from which we quote as follows:

"The accident occurred Febraury 21, 1933. While claimant was undergoing treatment after injury, it was recommended that he should have his teeth removed. Nineteen teeth, all claimant had, were extracted and his condition improved. Claimant contended he should be allowed $50 for a new set of false teeth but no award for the purpose was made. When the accident occurred, claimant had two false teeth attached to a plate. The teeth were knocked from the plate. There was no other injury to teeth. Claimant already had decayed and infected teeth. There was no evidence that any of the teeth extracted became decayed or infcted as a result of the accident, and there was no basis in the evidence to sustain a claim for the cost of a new set of false teeth."

We are of the opinion that this case has no application to the facts of the case before us. The case cited involved a direct injury to two false teeth attached to a plate. These teeth were knocked from the plate but there was no other injury to teeth. There was involved in the Horn case no question as to a statutory duty of the employer to provide treatment for the employee such as is involved in the case before us.

It is further complained by the appellants that the attorney-referee, the Commission, and the circuit court were in error in awarding the appellee compensation on the basis of an average weekly wage of $30.00 and a compensation rate of $20.00. We think this contention of the appellants is not well founded. Section 6998-16, Vol. 5A Recompiled, Code of 1942, provides in part that the method of determining average weekly wages where the employee works less than 52 weeks is to divide the earnings during the period by the number of weeks and parts thereof during which the employee earned wages. The Section further provides that "where by reason of the shortness of time during which the employee has been in the employment of his employer it is impracticable to compute the average weekly wages by the above method

of computation, regard shall be had to the average weekly amount which, during the first 52 weeks prior to the injury or death, was being earned by a person in the same grade, employed at the same or similar work in the community.''

The employer's plant superintendent, Lloyd Edward Tarver, testified that he hired the appellee and fixed his wages at 75¢ per hour. He said that he did not hire him for any particular job and that he did not hire any of the employees for any particular job, but that he hired them to do anything that came to hand. He further said that there was no job classification among the employees; that the wages of all of the employees were not less than 75¢ per hour for an average of 40 hours per week. Thus the proof shows that all of the employees were in the same grade and employed at the same or similar work in the community. The employer's work week began on Friday and extended through Wednesday. The appellee went to work on Monday, which was in the middle of a work week, and, therefore, he could not make 40 hours during that week. He returned to work on Friday, which was the beginning of a second work week, but he was injured on Saturday and was thereby prevented from making 40 hours during the second work week. Undoubtedly he would have made 75¢ per hour for a 40 hour work week but for the particular circumstances of his case. It is manifest, therefore, that by reason of the shortness of time during which he worked in each of the two work weeks it is impracticable to compute his average weekly wages by dividing his earnings by the number of work weeks in which he earned wages. In accordance with the latter portion of the statute above quoted, regard must therefore be had to the average weekly amount which during the first 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same or similar work in the community. Other employees of the employer's plant, who, like the appellee,

were employed to do anything that came to hand, and were therefore in the same grade and engaged in similar work in the community, were earning on an average of 75¢ per hour for an average of 40 hours per week, or an average weekly wage of $30.00.

We are accordingly of the opinion that, applying the latter portion of the statute above quoted to the facts of this case, the attorney-referee, the Commission, and the Circuit Court were correct in determining the average weekly wage of the appellee to be $30.00. This conclusion does no violence to the decisions of this Court in the cases of Pepper v. Barrett, 82 So. 2d 580, and Schilling v. Mississippi State Forestry Commission, 85 So. 2d 562, since the decision in each of those cases was based upon a different state of facts.

The appellee has prosecuted a cross-appeal whereby he seeks an adjudication awarding to him statutory penalties on the compensation payments past due. There was no allowance of penalties by the attorney-referee, the Commission or the circuit court. There was no cross-appeal by the appellee from the order of the attorney-referee to the Commission, or from the Commission to the circuit court as to the question of penalties. The cross-appeal cannot now in these circumstances be considered by this Court. Dixie Pine Products Company v. Dependents of Bryant, etc., 89 So. 2d 589.

The appellee has filed a motion for additional attorneys' fees to be allowed the attorneys of record for appellee for services rendered in representing him in his claim for compensation. The record discloses that said attorneys have been allowed a fee of 25% for services rendered the appellee before the attorney-referee, the Commission and the circuit court. The motion of the appellee will be and it is sustained to the extent that an additional attorney's fee in an amount which added to the fee of 25% heretofore allowed will equal a total fee of 33-1/3% of the amount recovered for all services.

Affirmed and remanded to commission, and motion for additional attorneys' fees sustained.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.