Teague *v.* Graning Hardwood Manufacturing Company, et al.

No. 41351          January 25, 1960          117 So. 2d 342

*Forrest A. Johnson,* Natchez, for appellant.

*Laub, Forman & Truly; E. C. Ward,* Natchez, for appellee.

LEE, J.

Samuel Teague, 71 years of age, was an employee of Graning Hardwood Manufacturing Company, engaged in the manufacture of chair stocks. On March 22, 1957, while performing the duties of his employment, he was struck in or on the left eye by a flying board about 1⅝

inches thick and 13 inches long. The left lens of his glasses was broken and shattered into the eye. His foreman, Homer Lambert, the superintendent of that part of the mill, which worked 15 or 20 men, came up immediately and helped in removing glass from the eye, saying at the time that he would send the claimant to a doctor if it did not get all right. Nothing more was said, and Teague was not sent to a doctor.

The next day Teague asked Graning, the owner of the mill, if he could get a pair of glasses. The reply was, ''No, that if I had been wearing welding glasses he would have got me a pair. He said for me to go to Kress and get me a pair, and that's all he ever said.'' The claimant worked regularly until May 6, 1957, when he was discharged.

About four days after the injury, claimant's eye kept bothering him, and he went to Dr. Coleman, who examined the eye, got some glass out of it, and said that the bone was fractured. About the same time, claimant procured Dr. Current, an eye doctor, to put an old lens in the frame and paid him $7 for that service.

On August 20, 1957, the claimant went to Dr. A. R. Perry, an eye specialist in Natchez, Mississippi, complaining of his eye. The doctor found a healed wound about ¾ of an inch in length, above the lower edge of the left eyebrow, and discovered a swollen place, about the size of a pea, in the area of the wound, which was very tender. Dr. Perry sent the claimant to Dr. Coleman, who made X-ray pictures of the area, and it was disclosed therefrom that there had been an injury to the rim of the orbit—some bone damage—and there was a slight ptosis, that is, a drooping of the upper left eyelid. The doctor, from objective findings, could not account for the pain about which the claimant was complaining. He said that the eyelid did not droop enough to include the pupil, and that there was nothing wrong with the eye which would impair his ability to do the

same work as he had done before the accident, insofar as his vision was concerned, if he was properly fitted with glasses. There was some hint of a traumatic neurosis as a possibility.

The attorney-referee denied compensation, but ordered reimbursement for the repair of the glasses and payment for Dr. Perry's services. On appeal, the Commission, after deleting the slight award by the attorney-referee, in all other respects affirmed the same. The circuit court affirmed the order of the commission.

Regardless of whether the claimant was discommoded or suffered as he was doing his work, the fact remains that he actually worked from the date of his injury, namely, March 22, 1957, until his discharge on May 6 thereafter, and during the period, was also paid for overtime. Consequently, if he in fact had a disability, he did not let it prevent him from the discharge of his duties.

Appellees say that claimant is not entitled to medical payments or reimbursement for $7 paid to Dr. Current for replacing the left lens of his glasses because he failed to give notice as required by Section 6998-18, Code 1942, Rec.

██ ██ Graning admitted that no notice had been posted on the premises, designating a representative to whom notice of injury should be given. When this is not done, then, under the above statute "notice received by any superior shall be sufficient."

██ ██ Lambert, the superintendent of that part of the mill, and obviously Teague's superior, came upon the scene immediately after claimant had been struck and helped to get some glass out of the eye. He even expressed concern that there might be more glass in the eye, and said that he would send the man to a doctor, if the eye did not get all right. Lambert knew that "a knot of wood had hit Teague in the eye" because Graning admitted that the superintendent so reported to him

when he talked to him about the claim. With a blow from such an object causing glass to be shattered into such a delicate organ as the eye, ordinary care required an immediate examination by a doctor. It is mandatory that medical services be furnished. Section 6998-08(a), Code of 1942 Rec.; Pepper v. Barrett, 225 Miss. 30, 82 So. 2d 580; B. C. Rogers & Sons v. Reeves, 232 Miss. 309, 98 So. 2d 875.

■■■ Although Lambert knew about this injury, he neglected to provide medical service. Employers, in their efforts to keep their premium rates low, must not be permitted to neglect injured employees or deal penuriously with doctors, who, in most instances, can reduce pain, prevent infection, speed recovery, repair and restore breaks and dislocations, and otherwise facilitate rehabilitation of workers.

■■■ The attorney-referee was clearly right in ordering payment of Dr. Perry for his services.

The claimant had worn glasses for 20 years. Obviously it was necessary for him to do so. The orbit of the eye was damaged. Unless the vision was corrected by glasses undoubtedly strain and irritation would have followed. Dr. Perry was of the opinion that Teague needed another prescription and more glasses to fit his eye at that time and that, with proper glasses, he could go back to work insofar as his eyes were concerned.

In B. C. Rogers & Sons v. Reeves, supra, causalgia resulted from the foot injury and the lower teeth were extracted as a part of the treatment for the injury and as a requirement in the process of Reeves' recovery. Thus to restore him to his maximum usefulness, a set of lower false teeth was required. In like manner that rationale requires reimbursement to the claimant for the repair of his glasses. This repair was justified as being within the term "other apparatus," provided for in said Section 6998-08(a).

The attorney-referee expressly reserved the question of serious facial disfigurement for future consideration.

■■■ So far as the amount of money which is involved in this appeal, it is trivial indeed. But this Court cannot permit the deprivation of rights or injustice merely because of the small amount in controversy. The order of the attorney-referee should have been affirmed by both the commission and the circuit court. Consequently the judgments of the commission and the circuit court are reversed and the cause is remanded to the commission with directions to it to make an award in accordance with the finding of the attorney-referee.

Reversed and remanded to the commission with directions.

*McGehee, C. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.