220 So.2d 320 (1969)
CENTRAL ELECTRIC AND MACHINERY COMPANY and Fireman's Fund American Insurance Companies
v.
H.T. SHELTON.
No. 45248.
Supreme Court of Mississippi.
March 10, 1969.
*321 Daniel, Coker, Horton & Bell, Alben N. Hopkins, Jackson, for appellants.
Mitchell & Rogers, Tupelo, for appellee.
BRADY, Justice:
This appeal involves a claim for workmen's compensation benefits made by appellee, H.T. Shelton, who began working for the appellant, Central Electric and Machinery Company, on November 5, 1964. Appellee testified that on Friday, July 1, 1966, while at work he stepped in some grease and his feet slipped and that a bad pain hit him in his back. He stated that the incident occurred in the middle of the evening, but that he continued to work until quitting time. He further testified that he did not report the incident to anyone at that time. Appellee returned to work Saturday and was to work a full day, but at noon, according to his testimony, he told the foreman, Johnnie Akins, that he was hurting and had to go. Monday was a holiday. Appellee returned to work Tuesday and worked until 1:30 Wednesday, at which time he again notified his foreman that he was suffering and had to quit. He did not work the remainder of the week. He next returned to work on Monday, July 18, and *322 worked until 3:30 on Friday. Appellee testified that about 11:00 on Friday, July 22, he again hurt his back picking up a heavy piece of steel, which he estimated weighed one hundred and fifty pounds.
It was stipulated by and between claimant and defendants that if Mrs. H.T. Shelton, wife of the claimant, testified as a witness she would corroborate the dates of the two alleged injuries, which injuries were reported to her by the claimant on his arrival home, and that she would also corroborate his testimony as to the pain and difficulty suffered thereafter and his pain up the present time.
The proof of the appellant established that appellee had injured his back in a car wreck in 1964, and in an on-the-job accident in December 1965, the latter of which had been the basis of a previous workmen's compensation claim. Witnesses for the appellant testified that the company had an arrangement whereby appellee could work when he felt like working.
The appellee first saw a doctor on July 27, which is less than four weeks after his first injury, at which time he went to Dr. Aubrey Harris, his family doctor. The record discloses that he notified Dr. Harris that about three weeks before he had sustained an injury to his lower back. At this time Dr. Harris found, as reflected in his report, the obvious symptom of tenderness in appellee's lower lumbar spine. However, it was only upon appellee's second hospital admission on October 26, 1966, that an x-ray of the lower spine showed narrowing between the intervertebral disc space between L-5 and S-1 which was not present three months prior thereto. This along with other findings suggested a ruptured disc in the lower lumbar spine. In the record of this hospitalization Dr. Harris noted the accident and injury of early July 1966.
Dr. Harris referred appellee to Dr. Royce Franks, an Orthopedic Surgeon. Dr. Franks, who testified for the appellee, stated that he first saw the appellee on March 13, 1967, on the complaint mainly of pain in the lower back and left leg. The record discloses that the appellee gave him a history of both injuries. Dr. Franks had previously seen the appellee in January 1966 in connection with injuries resulting from an automobile accident. X-rays taken in March 1967 showed generalized hypertrophic spurring of the lumbar spine, most marked on the L-4 and L-5 vertebrae. Dr. Franks felt that the appellee probably had a herniated lumbar disc. Appellee was admitted to the hospital on March 21, 1967, for a myelogram which showed a herniated L4-5 disc on the left. On March 22 exploratory surgery revealed that L4-5 was bulged and herniated and the disc was removed. Appellee was hospitalized ten days. Dr. Franks testified that when he last saw appellee on September 8 appellee was still complaining of low back and left leg pain. Dr. Franks testified that based on the history given him by appellee the probable cause of the injury was one or both of the incidents in July 1966.
Dr. Franks on cross-examination testified that when he examined the appellee in 1964 he found a degree of degenerative arthritis which indicated that appellee had had the condition for several years. He stated that it was possible considering appellee's condition that the injury could have been the result of the ordinary wear and tear of life. He testified that at the time of the hearing appellee was totally disabled and attributed at least 50% of the injury to the pre-existing degenerative condition. A letter written by Dr. Franks dated November 14, 1967, was put in evidence which stated that appellee had a 15% partial permanent disability and that he had reached maximum medical recovery.
A meticulous study of the record and the briefs in this cause disclose that the cardinal issues presented in this cause are primarily factual and relate to (1) whether or not the claimant sustained the injuries complained of on the dates of July 1, 1966, and July 22, 1966, and whether or not these injuries arose out of and in the course of his employment by the appellant, Central Electric *323 and Machinery Company; (2) whether notice of injury was received by the appellant, Central Electric and Machinery Company; and (3) the duration of temporary total disability and the degree of permanent partial disability suffered by appellee. Involved also factually was the question of what degree, if any, pre-existing diseases, handicaps or lesions played as a contributing factor to his injuries and disability.
In support of their contention that the appellee's injury was not work connected, appellants urge strongly the testimony of Mrs. Twila Dye and rely upon documentary evidence identified in connection with her testimony which shows written applications for benefits under a hospital group insurance policy, one of which was prepared by Mrs. Dye for said benefits, signed and given by the appellee together with statements by his doctors that his injuries were not work connected, and also upon appellee's efforts to obtain social security benefits. Mrs. Dye testified that the first time she knew anything about a workmen's compensation claim was when she received a B-9 form from Dr. Franks. She contends that the appellee denied that the injury was work connected and that at that time she wrote on the top of the form "THIS IS NOT A WORKMEN'S COMP. CLAIM." The appellants contend that the weight of the testimony in the light of these facts and circumstances is overwhelmingly against the finding of facts by the Workmen's Compensation Commission that appellee's injuries arose out of and in connection with his employment.
While it is true the appellee signed written statements in connection with a group insurance policy, in one of which Dr. Harris corroborated his statement that the injury was not work connected and in another of which Dr. Franks likewise corroborated appellee's statement that his injuries were not work connected, the fact nevertheless remains that Mrs. Dye prepared one of the forms for the appellee and that appellee testified that he made the application for group insurance disability benefits and the statements necessary to obtain the same because Mrs. Dye had advised him he would not be able to obtain compensation benefits. Appellee also stated that it was imperative that he obtain the disability payments and too he felt it was imperative that he assert his injuries were not work connected, as reflected by this statement of the appellee: "I didn't have the money. That is the only way I could get it and the doctor said I needed it."
It is for the commission, based on the medical and lay testimony, to determine not only whether or not the bulge or herniated disc and the resultant disability arose out of and in the course of appellee's employment but also to determine, if allowable, when compensability shall begin. We hold that the evidence as reflected in the record is substantial to sustain the findings of the commission insofar as this and other factual issues are concerned. Knox Glass, Inc. v. Evans, 197 So.2d 784 (Miss. 1967); Wilcher v. D.D. Ballard Constr. Co., 187 So.2d 308 (Miss. 1966); Parker v. United Gas Corp., 240 Miss. 351, 127 So.2d 438 (1961); Sullivan v. C. & S. Poultry Co., 234 Miss. 126, 105 So.2d 558 (1958); Malley v. Over The Top, Inc., 229 Miss. 347, 90 So.2d 678 (1956); and Dunn, Mississippi Workmen's Compensation § 289 (2d ed. 1967).
In connection with the above contention, counsel for the appellants in their oral argument and briefs strenuously urge the doctrine of estoppel. It is their contention that the appellee having signed two insurance applications for group insurance benefits stating that the injury was not work connected and allegedly having told Mrs. Dye that the injury was not work connected is now estopped to assert his rights under the Workmen's Compensation Act. The main fallacy in the argument of estoppel is simply that the facts upon which appellants predicate the estoppel are in dispute, that is that the appellee either contradicted Mrs. Dye or gave explanations for *324 his actions which, if believed, would negate the effectiveness of such documents as a basis for estoppel. As we have held previously, the signing of an application for group insurance benefits is a factor to be considered in determining whether or not the injury was work connected. Parker v. United Gas Corp., supra. We have not held and do not hold now under the disputed facts in the record that the signing of such documents is a bar per se to a claim under the Workmen's Compensation Act. It is obvious that to uphold appellants' contention that estoppel should operate absolutely in this cause would eliminate the commission as a fact finding body and nullify the intent and purpose of the Workmen's Compensation Act.
The veracity of witnesses and the weight of the evidence are and remain factual issues for determination by the commission. The evidence here in both aspects was in sharp conflict, and substantially so. These facts were by the commission resolved against the appellants. This Court does not propose to transform itself into a fact-finding tribunal, and where the evidence is substantial, as it is here, to support the commission's findings of fact, we will for obvious reasons, continue as we have in the past to affirm the commission unless it is clear that a miscarriage of justice will result. The humanitarian and salutory legislative intent of the act will not be imperiled by appellants' non-factually established estoppel concept. We find that the commission acted upon substantial evidence in resolving these issues in favor of the appellee.
We further hold that adequate notice was given the employer, Central Electric and Machinery Company, under Mississippi Code 1942 Annotated Section 6998-18 (1956) and the cases construing the section. We find ample proof to support the commission's finding that the employer had knowledge of the appellee's ailment and no proof to show that appellant, Central Electric and Machinery Company, was prejudiced by any asserted failure of the appellee to notify this appellant. Adequate knowledge has been found to exist as in the case at bar when the employer knows the employee is physically ailing, but does not know that the ailment is work connected. Davis v. Clark-Burt Roofing Co., 238 Miss. 464, 118 So.2d 774, 119 So.2d 926 (1960). The burden of showing prejudice was therefore upon the appellants. Pepper v. Barrett, 225 Miss. 30, 82 So.2d 580 (1955). We conclude that the employer failed to establish prejudice.
Appellants further contend that under Mississippi Code 1942 Annotated Section 6998-08(e) (1956) and General Rule 9 that the commission was unwarranted in holding appellants liable for medical payments. While we interpose no evaluation of the rule in Fowler Hereford Farm v. Madden, 207 So.2d 622 (Miss. 1968), a case urged by appellants in support of their contention, we do find that case is factually distinguishable from the case at bar. In the Madden case, supra, the claimant reported to a doctor designated by the company and was under his treatment. The doctor determined that maximum medical recovery had taken place with a 5% permanent partial disability and discharged the claimant as able to return to work. The claimant did not report back to the doctor on his ailment or dissatisfaction, but entered the Veterans Administration Hospital in Jackson, where he was treated. Because claimant did not request any further medical treatment from the employer, we held that Section 7(e) of the Act [Miss. Code Ann. § 6998-08(e) (1956)] was applicable, which section limited the payment of doctor bills to the sum of $100.
In the case at bar, the commission found that the appellee had given the employer notice and that the employer had advised the appellee that nothing could be done for him through workmen's compensation. The employer clearly breached the mandate of Section 7 of the Act in that he failed to furnish the appellee with the requisite *325 medical treatment. It is pointed out in Dunn, Mississippi Workmen's Compensation section 341 (2d ed. 1967):
In effect, the rule is that knowledge by the employer that a disabling injury or even an illness has occurred, followed by failure to provide medical services, is sufficient to impose liability upon the employer for medical services selected by the employee.
Teague v. Graning Hardwood Mfg. Co., 238 Miss. 48, 117 So.2d 342 (1960); Port Gibson Veneer & Box Co. v. Brown, 226 Miss. 127, 83 So.2d 757 (1955); Pepper v. Barrett, 225 Miss. 30, 82 So.2d 580 (1955); Thornbrough Well Servicing Co. v. Brown, 223 Miss. 322, 78 So.2d 159 (1955).
Under the factual determination made by the commission and supported by substantial evidence, the appellants cannot now escape liability for the medical treatment, which is reasonable and necessary in order that the employee be restored to maximum usefulness under the physical impairment resulting from his injury.
We hold that the commission erred, however, in applying permanent partial disability benefits from the date of its order. For the reason pointed out in Cockrell Banana Company v. Harris, 212 So.2d 581 (1968), these benefits must be apportioned from the date of claimant's maximum medical recovery. The order of the commission is therefore modified so that the claimant will be compensated for permanent partial disability with the apportionment to begin on November 14, 1967, the date he reached maximum medical recovery. Maximum benefits are, of course, likewise apportioned in accordance with the commission's findings of 15% permanent partial disability and 50% apportionment due to pre-existing conditions.
Judgment affirmed as modified.
ETHRIDGE, C.J., and RODGERS, JONES and INZER, JJ., concur.