560 P.2d 545

**Mary Ann GARCIA, Plaintiff-Appellee,**

v.

**GENUINE PARTS COMPANY and Sentry Insurance Company, Defendants-Appellants.**

**No. 2547.**

Court of Appeals of New Mexico.

Jan. 18, 1977.

Rehearing Denied Jan. 31, 1977.

Certiorari Denied Feb. 28, 1977.

James T. Roach, Klecan & Roach, P.A., Albuquerque, for defendants-appellants.

Arturo G. Ortega, Michael D. Bustamante, Ortega, Snead & Dixon, Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendants appeal the judgment in favor of plaintiff in this workmen's compensation case. The issues raised group into two categories: (1) proof of disability, and (2) basis for liability for medical expenses.

Plaintiff was accidentally injured while at work on December 31, 1973. She filed a complaint seeking workmen's compensation benefits in December, 1974. The case was tried in January, 1976. The transcript on appeal was filed in this Court on August 6, 1976; briefing was completed on November 29, 1976. See §§ 59–10–13.10(A) and 59–10–16.1, N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1) concerning the advancement of workmen's compensation cases on court calendars.

There is evidence that a heavy box fell on a co-worker's foot; that upon lifting the box, plaintiff felt a sharp pain in her back that went down into her legs. This was immediately reported to plaintiff's manager who inquired whether plaintiff wished to continue working or wanted to go home. There is evidence that plaintiff continued working, but with increasing pain. During her luncheon time, on the day of the accident, plaintiff went to the emergency room of a hospital where she was told not to return to work for three days and to avoid heavy lifting on her return. Plaintiff was seen by Dr. Cornish on January 24 and February 28, 1974; Dr. Cornish diagnosed a muscle strain.

Plaintiff was seen by Dr. Hollinger on January 29 and February 11, 1974. Up until April, 1974 she was being seen by a chiropractor. She returned to Dr. Hollinger in August, 1974 with increased complaints and has remained under his care. This care

included a laminectomy in October, 1974 and a laminectomy and fusion in February, 1975. There is evidence that the fusion was a "non-union" and that an additional surgical procedure is necessary.

*Proof of Disability*

The trial court found that plaintiff was totally disabled at the time of trial and had been since the accident on December 31, 1973. Defendants raise three issues in connection with this finding.

Two of the issues are based on the testimony of defendants' medical witness, Dr. Parnall, who disagreed with Dr. Hollinger as to the need for Dr. Hollinger's surgical procedures. Defendants claim they cannot be held liable for aggravation of plaintiff's condition caused by unskillful medical treatment by a physician chosen by plaintiff. Defendants also claim an absence of substantial evidence to support an award of total disability in that any disability was caused by negligence of physicians chosen by plaintiff. Both contentions are directed to Dr. Hollinger's treatment; we assume, but do not decide, that Dr. Hollinger was selected by plaintiff.

These two issues are based on claims of unskillful medical treatment and negligence on the part of Dr. Hollinger. Evidentiary support for these claims is necessarily based on Dr. Parnall's testimony. Assuming, but not deciding, that Dr. Parnall's testimony provides such support, we have a conflict in the evidence; the medical experts were in disagreement.

Defendants recognize that this conflict exists. They contend we should not decide these two issues on the basis of substantial evidence. Although the trial court found that Dr. Hollinger's treatment was necessary, defendants would have us disregard this finding. In essence, defendants ask us to weigh the evidence, determine that Dr. Hollinger was not to be believed and hold that the facts are those inferable from Dr. Parnall's testimony.

We do not weigh the evidence on appeal; rather we view the evidence in the light most favorable to support the the findings of the trial court. *Duran v. New Jersey Zinc Company*, 83 N.M. 38, 487 P.2d 1343 (1971). There is substantial evidence that Dr. Hollinger's treatment was necessary and that plaintiff's disability resulted from the accident of December 31, 1973.

A third issue under this point is that there is no proof of disability between February 11, 1974 and August 23, 1974. During this period plaintiff was not seen by Dr. Hollinger. The evidence is that during this period of time, plaintiff visited a chiropractor and may have been treated in the emergency room of a hospital. The chiropractor did not testify; there is no medical evidence concerning emergency room treatment, if any. For this period of time Dr. Hollinger testified: "I would not really be able to state whether or not she could work."

Defendants state: "Dr. Hollinger admitted that there was no medical probability that . . . [plaintiff] was disabled" during the period in question. They assert that § 59–10–13.3(B), N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1) precludes an award of compensation for this period.

Defendants misconstrue Dr. Hollinger's testimony. The quoted testimony went only to an inability to testify as to working ability during the period in question; it did not go to whether disability did or did not exist during this period. Compare, *Mares v. City of Clovis*, 79 N.M. 759, 449 P.2d 667 (Ct.App.1968). Other testimony of Dr. Hollinger was to the effect that plaintiff was continuously disabled to some extent after the injury occurred. Dr. Parnall testified there was some interference with plaintiff's work due to the injury, but he could not say how long this "lame back" would have lasted if surgery had not been done. The first surgery was performed subsequent to the time period in question.

Section 59–10–13.3(B), supra, reads:

"B. In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compen-

sation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists."

This section requires the causal connection between the disability and the accident be established as a medical probability by expert medical testimony. Both Dr. Hollinger's and Dr. Parnall's testimony met this requirement. See *Gammon v. Ebasco Corporation,* 74 N.M. 789, 399 P.2d 279 (1965).

Neither physician testified as to the extent of plaintiff's disability during the period in question. Section 59–10–13.3(B), supra, does not require that the extent of the disability be established as a medical probability by expert medical testimony. "Disability" is defined in terms of ability to perform work and requires consideration of the claimant's age, education, training, physical capacity, mental capacity and work experience. Sections 59–10–12.18 and 12.-19, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1). By statutory definition, more than physical condition is involved in determining "disability". See *Goolsby v. Pucci Distributing Company,* 80 N.M. 59, 451 P.2d 308 (Ct.App. 1969).

█ Once causation is established by appropriate medical evidence, the absence of medical testimony as to the *extent of disability* does not bar a disability award. The extent of disability may be established by the plaintiff. See *Seay v. Lea County Sand and Gravel Company,* 60 N.M. 399, 292 P.2d 93 (1956). Plaintiff's testimony was substantial evidence supporting the award of total disability during the period in question.

*Basis for Liability for Medical Expenses*

█ The medical bills were substantial. The trial court found the bills were reasonable in amount and were incurred in the necessary treatment of plaintiff. It also found that additional medical and hospital care would be required in the future, and that plaintiff was entitled to be paid for reasonable future expenses. Defendants raise two issues in connection with these findings.

The first issue goes to the sufficiency of the evidence to support the findings. They concede that Dr. Hollinger testified that the bills were reasonable in amount and that the treatment reflected by the bills was necessary. Because the trial court adopted plaintiff's requested findings, defendants urge a "more stringent mode of review". Again, defendants are asking this Court to weigh the evidence, to disregard Dr. Hollinger's testimony and to accept Dr. Parnall's testimony. We are not fact finders, but a court of review. The trial court resolved the evidentiary conflicts. It is not our function to weigh the evidence, but to determine whether substantial evidence supports the challenged findings. *Duran v. New Jersey Zinc Company,* supra. The findings are supported by substantial evidence.

█ The second issue goes to the basis for holding defendant liable for the medical bills, and involves the meaning of § 59–10–19.1, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1). The pertinent portion of that section reads:

"A. After injury, and continuing as long as medical or surgical attention is reasonably necessary, the employer shall furnish all reasonable surgical, physical rehabilitation services, medical, osteopathic, chiropractic, dental, optometry and hospital services and medicine, not to exceed the sum of forty thousand dollars ($40,000), unless the workman refuses to allow them to be so furnished.

"B. In case the employer has made provisions for, and has at the service of the workman at the time of the accident, adequate surgical, hospital and medical facilities and attention and offers to furnish these services during the period necessary, then the employer shall be under no obligation to furnish additional surgical, medical or hospital services or medicine than those so provided  . . .."

Language similar to that appearing in Paragraph A of § 59–10–19.1, supra, was interpreted in *Johnson v. Armstrong & Armstrong,* 41 N.M. 206, 66 P.2d 992 (1937). *Johnson* states that the language in Paragraph A:

"imports more than a mere passive willingness or duty to furnish medical and surgical aid when called upon. It allows the employer to select his own physicians and surgeons for the care of his injured employees, but imports that arrangements should be made in advance, or that some one should be at hand in authority to provide medical and surgical care in cases of emergency like the one here considered. *Case of Ripley,* 229 Mass. 302, 118 N.E. 638; *In re Panasuk (In re American, etc., Co.),* 217 Mass. 589, 105 N.E. 368."

The two Massachusetts cases cited in *Johnson,* supra, elucidate. *In re Panasuk,* 217 Mass. 589, 105 N.E. 368 (1914) states that the obligation to provide medical services is imposed by the express words of the statute:

"This duty must be performed or reasonable efforts made to that end before the statutory obligation is satisfied. . . . The word 'furnish' in such connection imports something more than a passive willingness to respond to a demand. It implies some degree of active effort to bring to the injured person the required humanitarian relief."

*In re Ripley,* 229 Mass. 302, 118 N.E. 638 (1918) affirmed the foregoing quotation from *Panasuk,* supra.

2 Larson's Workmen's Compensation Law, § 61.12, p. 10–453, states:

"[T]he first issue that sometimes comes into litigation is the question whether the initiative lies with the employee to apply for medical benefits, or with the employer to call attention to their availability and furnish them without being asked. It is usually held that, when the employee has furnished the employer with the facts of his injury, it is up to the employer to instruct the employee on what to do to obtain medical attention, and to inform him regarding the medical and surgical aid to be furnished."

See *Draney v. Industrial Accident Commission,* 95 Cal.App.2d 64, 212 P.2d 49 (1949); *Teague v. Graning Hardwood Manufacturing Co.,* 238 Miss. 48, 117 So.2d 342 (1960);

Compare, *Gross v. Wichita Compressed Steel Company,* 187 Kan. 344, 356 P.2d 804 (1960).

The evidence is uncontradicted that defendants made no active effort to provide medical attention. When plaintiff reported the accident and her back and leg pain to her manager, the only inquiry was whether plaintiff wanted to continue working or go home. The manager never mentioned medical attention. Plaintiff went to the hospital emergency room on her own initiative. She went to see Dr. Cornish either on the recommendation of some one in the emergency room or because he had previously treated her for an unrelated illness; the evidence supports either view.

However, there is no issue in this appeal concerning the emergency room charge on the date of the accident or Dr. Cornish's bill. Defendants assert that they paid these bills. The trial court refused to so find, and properly under the record which is before us, because the deposition on which defendants rely has not been included in the record on appeal. However, we will assume that defendants did pay these bills.

Defendants claim they are not liable for the bills incurred in connection with Dr. Hollinger's treatment. These are the bills for which plaintiff recovered judgment. Defendants assert they are not liable for these bills under Paragraph B of § 59–10–19.1, supra. On the basis that they paid the emergency room charge and Dr. Cornish's bill, they assert that they were furnishing adequate medical attention and therefore are not liable to furnish additional medical services. They point out that plaintiff never requested them to provide additional medical services, never asserted that Dr. Cornish's services were inadequate, failed to keep an appointment with Dr. Cornish and on the day of the unkept appointment, went to Dr. Hollinger on her own initiative. They rely on cases where the employer was providing medical services. See, for example: *Dudley v. Ferguson Trucking Company,* 61 N.M. 166, 297 P.2d 313 (1956); *Provencio v. New Jersey Zinc Co.,* 86 N.M. 538,

525 P.2d 898 (Ct.App.1974) and cases cited in *Provencio.*

We have assumed that defendants paid the emergency room charge and Dr. Cornish's bill. Does this assumption require a conclusion that defendants were furnishing medical services to plaintiff? No. There is nothing in this record showing when the bills were paid; we note that Dr. Cornish's report to the insurance company was written more than ten months after the date of his examination. Plaintiff testified that she did not know who paid these bills; she never knew that defendants were willing to provide medical treatment; she selected the physicians that did in fact treat her. The facts here do not show that defendants undertook their obligations to pay plaintiff's medical expenses. See *Security Insurance Co. of Hartford v. Chapman,* 88 N.M. 292, 540 P.2d 222 (1975).

Defendants' position is that they had no obligation other than to respond to requests for medical attention. We have pointed out that "furnish" in Paragraph A of § 59–10–19.1, supra, requires more than a passive willingness to respond to a demand. Paragraph B of the statute requires an "offer to furnish" medical services to avoid liability for the services procured by plaintiff. "Furnish" in Paragraph B also requires more than a passive willingness to respond to a demand.

Before defendants can avoid liability under Paragraph B of § 59–10–19.1, supra, they must have provided medical services or they must have affirmatively offered the services. Assuming defendants did in fact pay two medical bills incurred by plaintiff on her own initiative, this assumption shows no more than a passive willingness to respond. See *McCoy v. Industrial Accident Commission,* 64 Cal.2d 82, 48 Cal.Rptr. 858, 410 P.2d 362 (1966). Not having offered medical services, § 59–10–19.1(B), supra, is not applicable. *Dudley v. Ferguson Trucking Company* and the rules discussed in *Provencio v. New Jersey Zinc Co.,* supra, are also inapplicable. Defendants are liable for the medical services which plaintiff procured.

Oral argument is unnecessary. The judgment is affirmed. Having considered the issues litigated on appeal and the time necessarily expended in responding to defendants' contentions, plaintiff is awarded $3,000.00 for the services of her attorneys in the appeal.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.