467 So.2d 935 (1985)
HALL OF MISSISSIPPI, INC.
v.
Walter GREEN.
No. 54647.
Supreme Court of Mississippi.
April 17, 1985.
*936 Wendell H. Trapp, Jr., Smith, Ross & Trapp, Corinth, for appellant.
Phil R. Hinton, Wilson & Hinton, Corinth, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is a workmen's compensation appeal from the Circuit Court of Alcorn County. Appellee, a 35-year-old male, worked for his family automobile dealership for approximately twelve years. In February 1981 he left the dealership and secured a job with appellant through the Mississippi Employment Commission as a temporary material handler. After four days in this position, appellee injured his back while lifting boxes. He worked the five hours remaining in his shift and sought medical treatment, both in Corinth and Memphis. He was treated conservatively and released, but advised not to return to his job immediately. In June, some four months later, while watching television on a Sunday afternoon, appellee coughed and immediately noticed pain in his back. As a result of this, he again sought treatment in Memphis, where surgery was performed for a ruptured disc. He returned for subsequent visits and was finally released in October 1981.
Appellee resumed his employment at his family car dealership where he earned $200 per week, is provided with two cars at no expense, along with gas and health insurance. At the trial below, appellant admitted the initial injury but alleged that appellee's condition was a result of a later non-work related injury (presumably the cough). Appellant also denies that appellee suffered any loss of wage earning capacity.
The administrative judge ruled that appellee suffered a work related injury, rendering a 15% permanent partial disability to the body as a whole, resulting in a loss of wage earning capacity of 50%. He further ruled that all appellee's earnings with Green Motor Company since his injury were not wages within the meaning of the Mississippi Workers' Compensation Act. Appellant petitioned for a review by the full commission and appellee petitioned for a review and increase of award; the full commission sustained the findings of the administrative judge and on appeal was affirmed by the circuit court.
Appellant has assigned the following errors:
I. THE TRIAL COURT ERRED IN FINDING APPELLEE'S RUPTURED DISC PROXIMATELY RESULTED FROM AN ON-THE-JOB INJURY.
II. THE TRIAL COURT ERRED IN AWARDING APPELLEE PERMANENT PARTIAL DISABILITY BENEFITS.
III. THE TRIAL COURT ERRED IN FINDING APPELLEE SUFFERED A LOSS OF WAGE EARNING CAPACITY.

POINT I.
It is uncontroverted that appellee received an on-the-job injury on February 11, 1981. Appellants contend this injury did not cause the ruptured disc and subsequent surgery. On review the medical testimony establishes that there was a causal relationship between appellee's on-the-job injury and his subsequent ruptured disc. Dr. DeSaussure, the surgeon who operated on the appellee stated the following:
Q. And assume that his injury in February of 1981 began the chain of events 
A. Yes, sir.
Q.  which resulted in him being operated on for a ruptured disc. Is that correct?

*937 A. Yes, sir.
Q. The two are connected in some way?
A. Oh, I don't know that. I said I'd give him the benefit of the doubt.
Q. And are you saying that you will give him the benefit of the doubt, today?
A. As far as I'm concerned, yes.
Q. Then of the two possibilities, one that it was the cough alone or the other being that it's related to the initial injury; in your expert opinion, to a reasonable degree of medical certainty, which is 
A. There's no way of telling.
Q. Then the cough is not more probable than the other? There's no way of distinguishing at this point.
A. That's my opinion; yes, sir.
Dr. Boyd who also examined the appellee, testified as follows:
Q. Have you been able to form an opinion as to whether the initial injury of Mr. Green was related or not related to the eventual rupture and the surgery?
A. In my opinion it probably was.
Q. You have reached an opinion?
A. That is my opinion.
Q. And in your expert opinion to a reasonable degree of medical certainty can you say that it probably was related?
A. In my opinion it was.
We also note that Dr. DeSaussure, in a letter dated September 11, 1981, made the following statement:
It is possible that Mr. Green weakened the annulus fibrosis which holds the disc in its normal position when he injured his back in February of 1981, but he got along fairly well until he sneezed at which time the annulus fibrosis was ruptured accounting for the extruded disc.
We find that there was substantial evidence before the commission to justify a finding of causal relationship between appellee's on-the-job injury and his subsequent ruptured disc surgery and disability. Therefore, appellant's first assignment of error is without merit.

POINT II.
It is the contention of the appellant that as a matter of law, appellee is not entitled to any permanent partial disability benefits because he has not met the requirements of the act.
Disability means incapacity because of injury, to earn wages which the employee was receiving at the time of the injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings. Miss. Workmen's Compensation Act, § 2(9); MCA § 71-3-3(i) (1972). (Emphasis added).
Appellants argue that the above section requires that an employee demonstrate an "incapacity" to earn wages which incapacity and the extent thereof must be supported by medical findings. Unless one is able to do so, one has failed as a matter of law to demonstrate entitlement to disability benefits. The medical testimony in this case was that after surgery the appellee should have been able to perform any duties that he did before surgery. Both physicians, however, indicated that the appellee had suffered an anatomical disability of 15% to the body as a whole as a result of the injury and subsequent surgery. Both physicians did, however, testify that the appellee was more likely to have future back problems than one without a similar injury and surgery. Dr. Boyd also testified that it was his opinion that if appellant had returned to the same work he had done previously with the appellant, it would further increase his chances of difficulties with his back. Also, Dr. Boyd made it clear that his disability rating dealt only with the functioning of the body and did not relate to limitations that the appellee might place upon himself because of pain or discomfort.
In contrast to this medical testimony, the appellee and his corroborating witnesses testified that he was unable to perform any task involving physical exertion and that he was plagued by pain. Mr. Jimmy Caldwell, with the Alcorn County Employment office, testified that because of appellee's education *938 and work experience, and prior back problems, it would be difficult for him to find employment in that area.
Before we address the question of whether or not appellee presented sufficient corroborating testimony to allow the trier of fact to find him disabled, we must dispose of appellant's contention that disability can only be proven by medical testimony Simply put, we hold that disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability. In the instant case supportive medical testimony consists of the testifying physician's finding that appellee suffered a 15% permanent anatomical disability.
Appellant's reliance on Harris v. Chicago Mill & Lbr. Co., 441 So.2d 557 (Miss. 1983), is misplaced. There the claimant suffered a ruptured disc and there was no medical testimony to establish an anatomical disability. Our holding here is in harmony with our previous holding in I. Taitel & Son v. Twiner, 247 Miss. 785, 157 So.2d 44 (1963).

POINT III.
Appellant also argues that the commission erred in finding appellee suffered a loss of wage-earning capacity based on a comparison of his pre-injury wages with his post-injury wages. Two issues are raised in this argument. The first involves the measure of appellee's pre-injury earnings.
It is uncontradicted that appellee was hired by appellant as a temporary material handler at a wage rate of $4.38 per hour. Appellant prints catalogues and other material which is seasonal. Temporary employees are hired during the time when seasonal catalogues are being printed and released when the work load decreases. Only if a temporary material handler works for a period of three consecutive months does he become eligible to be a permanent material handler, then receiving fringe benefits and a wage increase. Appellee worked only four days. His weekly wage at the rate paid temporary material handlers would have been $175.20. Permanent material handlers earn an average over a 52 week period of $213.92 per week.
Section 71-3-31, Mississippi Code Annotated (1972), deals with the determination of average weekly wage for employees who work less than a 52 week period. The statute states in pertinent part as follows:
Except as otherwise specifically provided, the basis for compensation under this chapter shall be the average weekly wages earned by the employee at the time of the injury, such wages to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52; ...

When the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided that results just and fair to both parties will thereby be obtained. Where by reason of the shortness of time during which the employee has been in the employment of his employer, it is impracticable to compute the average weekly wages by the above method of computation, regard shall be had to the average weekly amount which, during the first 52 weeks prior to the injury or death, was being earned by a person in the same grade, employed at the same or similar work in the community.
(Emphasis supplied)
Appellant urges that the commission erred by determining that appellee's pre-injury earnings for compensation purposes were $213.92, the amount earned by the average permanent material handler. According to appellant, Green was not "in the same grade" as a permanent material handler and his loss cannot be determined by the rate earned by permanent employees.
Appellant cites Sullivan v. City of Okolona, 370 So.2d 921 (Miss. 1979), as authority *939 for its position. There a volunteer fireman had worked nine days as a fireman over a 52 week period and was paid on a per call basis a total of $35. This Court held that his average weekly wage for compensation purposes was $35 divided by 52 weeks, rather than the average wage earned by a full-time fireman in the community. We reasoned that Sullivan was not in the same grade as a full-time fireman.
Appellee responds that Sullivan should be distinguished based upon the fact that Sullivan had worked for a 52 week period and was therefore ineligible for an average wage determination based on the portion of the statute which treats situations "where, by reason of the shortness of time (of employment)" it is impractical to compute the wage by dividing the earnings by the number of weeks worked. He cites our decision in B.C. Rogers & Son, et al. v. Reeves, 232 Miss. 309, 98 So.2d 875 (1957), where we utilized the alternate method in the case of a claimant who had worked less than a 40 hour period before his injury, which occurred in his second week of employment.
In Rogers, however, we noted that all the employees were in the same grade and we were not called upon to decide an issue involving wage differentials between permanent and temporary employees.
An additional complicating factor in the present case is that temporary material handlers are eligible to become permanent after three months of employment. Appellant hires from 50 to 70 temporary people four to six times a year. The appellee was hired in February of 1981. His foreman testifying in November of 1981 estimated that 12 to 15 people had moved from temporary to permanent during that period. He refused to speculate whether the appellee would have been among that number. He states that temporary employees are elevated sometimes after more than one temporary stint and those receiving the highest evaluations are hired to fill such permanent slots as they come open.
On this record we are also unable to speculate that the appellee would have become permanent. We hold that the commission erred in determining appellee's average wage based on the wage received by permanent employees. A determination that appellee's pre-injury earnings averaged $175.20 or $4.35 for 40 hours is a result that is "just and fair to both parties". § 71-3-31 MCA (1972).
Finally appellants argue that appellee's post-injury earnings demonstrate that he has suffered no loss of wage-earning capacity. Here the only question for determination is whether Green's post-injury earnings from Green Motor Company were wages or some other compensation, such as return on capital invested, or sympathy wages. There was testimony in the record that appellee was a partner in the Green Motor Company and therefore, was entitled to a monetary draw. His brother testified that appellee was paid even though he could not work because he was a partner and family and that under the circumstances he would have to be supported. This constituted substantial evidence upon which the commission could base its conclusion and therefore, this Court is compelled to affirm its findings.
The ruling of the commission is therefore affirmed in all respects, except its determination of appellee's pre-injury wage and this cause is remanded to the commission to recompute the appellee's benefits based on a pre-injury wage of $175.20 per week.
AFFIRMED AND REMANDED TO THE COMMISSION FOR PROCEEDINGS IN COMPLIANCE WITH THIS OPINION.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.