878 So.2d 113 (2003)
Matthew M. WALKER, Appellant,
v.
DELTA STEEL BUILDINGS AND BUILDERS and Contractors Association of Mississippi, Appellees.
No. 2002-WC-00505-COA.
Court of Appeals of Mississippi.
October 21, 2003.
Rehearing Denied January 20, 2004.
Certiorari Denied July 29, 2004.
*115 Charlie Baglan, Lawrence J. Hakim, Batesville, attorneys for appellant.
John H. Freeland, Ridgeland, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and IRVING, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. This is a workers' compensation scheduled member case. The Commission awarded benefits based strictly on the medical impairment, since the claimant is now earning a higher wage than he did at the time of injury. The claimant argues that his present income is largely based on his employer's sympathy for his plight and is not an accurate measure of his disability. We find the Commission to have substantial evidence to support its conclusion. Therefore, we affirm.
¶ 2. In September 1996, Matthew Walker was installing metal sheet roofing as an iron worker for Delta Steel Buildings, Inc. He slipped and fell approximately fifteen feet onto the pavement. The contact shattered Walker's left elbow. He also complained of pain in his left hip. Walker was provided medical treatment and temporary benefits. Walker reached maximum medical improvement in June 1997. After a hearing on Walker's petition to controvert, an administrative law judge awarded Walker benefits based on permanent disability of 75% for his left arm. The Commission lowered the award to 35%. In the first level appeal, the circuit court in Leflore County affirmed. Walker's subsequent appeal has been deflected here.

DISCUSSION
¶ 3. The proceedings below raise questions of medical and occupational loss to Walker's arm. At the outset we note two important principles governing our review. First, the Commission and not the administrative judge is the controlling finder of fact. Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss.1990). We defer to the Commission's findings even when it disagreed with the administrative law judge. We will not disturb the findings if they are supported by substantial evidence. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991). On questions of law, our review is de novo. Id. Secondly, we recognize that the workers' compensation statutes are to be given "broad and liberal construction," and doubtful cases should be resolved in favor of compensation. Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 744 (Miss.2002).

1. Functional impairment
¶ 4. In cases in which a claimant has suffered a scheduled member injury, the claimant is entitled to benefits based on the greater of the functional or the industrial loss, if there is variance between the two. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247-48 (Miss.1991). Functional or medical impairment refers to actual physical limitations irrespective of their impact on one's ability to earn a living. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 166 (Miss.1991). By contrast, industrial or occupational disability is functional impairment "as it affects the claimant's ability to perform the duties of employment." Id. Dr. Bruce Newell, Walker's treating physician, stated that after treatment and therapy, Walker had *116 reached maximum medical improvement on June 24, 1997. He rated the permanent medical impairment at 35% of the left arm. Delta Steel had Walker examined by a second orthopaedic surgeon, Dr. Owen Tabor, who assessed Walker as 10% functionally impaired in his left arm. The administrative law judge noted the functional impairment ratings of both doctors, but ultimately held that Walker's occupational impairment exceeded even the higher 35% rating posited by Newell. The Commission later reduced the subsequent award to benefits based on this 35% functional impairment rating.

2. Occupational loss of use
¶ 5. The administrative law judge concluded that Walker's experience as a heavy manual laborer, coupled with Dr. Tabor's concerns over Walker's inability to carry heavy objects or continue working in precarious positions on the roof, were evidence of physical limitation "more credible than the results of the functional capacities evaluation, which are suspect because Mr. Walker did not give consistent responses on the test." She therefore awarded benefits on the finding of 75% industrial loss of use of Walker's left arm. On review, the Commission framed the question as "whether the evidence indicates sufficient loss of wage earning capacity to support a finding of industrial disability beyond the medical impairment assigned [Walker's] arm." Alumax Extrusions, Inc. v. Wright, 737 So.2d 416, 421 (Miss.Ct.App.1998). The Commission noted Walker's medical evaluations by Tabor and Newell, as well as post-injury wages earned by Walker as a carpenter. In diminishing the award to correspond to Dr. Newell's 35% functional impairment rating, the Commission held:
All things considered, we are convinced that Mr. Walker has demonstrated a post-injury earning capacity of at least $11.00 to $11.50 per hour. This exceeds the average wage he earned before his injury. Under the circumstances, therefore, his compensation for permanent disability becomes a function of the medical/functional loss of the use of his arm.

3. Consideration of wage-earning capacity
¶ 6. The crux of Walker's argument is that the Commission, in finding that Walker's occupational disability did not surpass his functional impairment, incorrectly applied certain presumptions regarding wage-earning capacity.
¶ 7. A claimant may always receive benefits for a scheduled member injury based on the percentage of loss of functional, i.e., medical, loss. If there is medical evidence that the claimant has a 35% permanent loss of use of an arm, the claimant may receive benefits computed on that basis even if those physical limitations do not affect the person's wage-earning capacity at all. Jensen, 828 So.2d at 745. That has been settled law.
¶ 8. The more difficult question in Jensen was the proof that was necessary when a claimant sought benefits for an industrial loss of use that was greater than what the medical evidence indicated were the physical limitations. The Court clarified the principles governing claims based on this kind of variance. The Court agreed with prior caselaw that a claimant was entitled to benefits based on a total loss of use of a scheduled member if it was shown that the person was no longer able to perform the customary acts of that person's usual employment. Id. at 746. The key conclusion in Jensen was that the "job at the time of injury" is not "necessarily the `usual employment.'" Id. at 747-48. Instead, the usual employment is "broader in scope than the job held at the time of injury," *117 and includes "jobs in which the claimant has past experience, jobs requiring similar skills," or other jobs for which the worker is suited. Id. at 747.
¶ 9. The Jensen court then announced a rebuttable presumption that would apply in such a case. Evidentiary presumptions are short-cuts in proof. If certain predicate facts are shown to exist, then the ultimate fact will be presumed, subject to rebuttal from the opposing party. The presumption here would be that in a scheduled member case, if the claimant presents evidence that he or she is "unable to continue in the position held at the time of injury," that "inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury." Id.
¶ 10. Since the earlier quoted explanation of "usual employment" indicates that this is a broader term than just the position at the time of injury means, this presumption becomes available even though the claimant has not addressed the ability to engage in the broadly defined usual employment. All that must be shown is an inability "to continue in the position held at the time of injury." The employer may then rebut by exploring the broad category of usual employment, and the claimant may address those issues as well. Id. at 747-48.
¶ 11. We acknowledge that another sentence that appears in this discussion in Jensen could be read to suggest a higher threshold of proof needed for the presumption:
The presumption arises when the claimant establishes that he has made a reasonable effort but has been unable to find work in his usual employment, or makes other proof of his inability to perform the substantial acts of his usual employment.
Id. This seems to indicate that the presumption does not arise until the claimant presents proof on the entirety of "usual employment," not just on the claimant's inability to return to the "job at the time of injury." As the Jensen court had already concluded that the two quoted terms were not synonymous, this sentence does create some ambiguity.
¶ 12. One interpretation is if the claimant also showed reasonable but unsuccessful efforts to find work in his usual employment, this would be another though more arduous means to create the presumption. We do not find that this quoted sentence removes the Court's preceding statement that inability to return to the job held at the time of injury creates a rebuttable presumption of total occupational loss of the member. We make that conclusion for three reasons.
(1) A rebuttable presumption is supposed to assist the presentation of evidence by avoiding the need for direct proof of certain facts in order to establish a prima facie case. If the presumption does not arise until evidence on the entire range of issues is presented, then no presumption is in operation.
(2) A later sentence in Jensen says that applying "this opinion's analysis to Jensen's claim indicates that he established, or very nearly established, that he could no longer perform the substantial acts of his actual employment at the time of his injury." Id. at 749 (emphasis added). Then the Court states that the remaining evidence revealed little impact from the injury on Jensen's ability to earn the wages that he was making when injured. This reference to "actual employment" is a refocus on the employment at the time of injury, not on the broader "usual employment" *118 category that is clearly defined in Jensen.

(3) There already is a related presumption in workers' compensation law. When a worker with a permanent impairment is not allowed to return to work by his former employer after the claimant reaches maximum medical improvement, that creates a prima facie case of total disability. John R. Bradley and Linda Thompson, Workers' Compensation Law, in 9 ENCY. MISS. LAW § 76:63 (2001), citing Jordan v. Hercules, 600 So.2d 179 (Miss.1992). Apparently this has only or at least usually been applied in nonscheduled member cases. The Jensen presumption as we have interpreted it is analogous: when the injury is to a scheduled member, the refusal of the former employer to rehire due to the injury creates the prima facie case of a total inability to use that scheduled member.
¶ 13. Under such a reading, Walker presented evidence to invoke the presumption. Delta Steel would not take him back in his former position because of physical limitations. The employer then presented evidence on Walker's present work and equivalent income. The undisputed evidence demonstrates that while he could not return to his pre-injury position as a heavy roof installer, his subsequent $11 to $11.50 post-injury hourly wage is actually higher than his wage at Delta Steel prior to his injury. The carpentry position held post-injury satisfies the Jensen requirements for "usual employment," that is, "jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria." Id.
¶ 14. Even if this rebuttal removes the Jensen presumption, Walker argues that he is making this substantial of an income only because of the benevolence of his new employer. Before discussing the evidence of a sympathy wage, we look at the principle on which Walker relies:
post-injury earnings equal to or in excess of pre-injury earnings are strong evidence of non-impairment of earning capacity, but that the presumption arising therefrom may be rebutted by evidence on the part of the claimant that the post-injury earnings are unreliable due to: increase in general wage levels since the time of accident, claimant's own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings.
McKinnon, 507 So.2d at 365 (some emphasis in original deleted).
¶ 15. Walker testified that but for his friend at Patton and Taylor Construction, he would not have received his present position. The record indicates also that Walker had been previously employed at Patton and Taylor. There is nothing to indicate whether Walker's wages at Patton and Taylor are disproportionate to either the work that he performed or the customary wage for the position. The Commission found that though there was evidence that Walker experienced some pain from his elbow in the job, "he is nonetheless able to satisfactorily and consistently perform this work. This is consistent with the findings of a functional capacity examination which demonstrated that Mr. Walker is capable of performing heavy to very heavy work." This rebuts the evidence that sympathy to some degree affected the wage that Walker was being paid.
¶ 16. The record contains substantial evidence rebutting a presumption of total *119 occupational loss. There was also substantial evidence to deny Walker's claim of sympathy wages. We find no error.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.