942 So.2d 276 (2006)
NISSAN NORTH AMERICA and Royal Insurance Company of America, Appellants,
v.
Ricardo V. SHORT, Appellee.
No. 2005-WC-01522-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*277 Simpson Gray Edmondson, Franklin Williams, attorneys for appellant.
Byron Russell Mobley, William Albert Brown, Hernando, attorneys for appellee.
Before LEE, P.J., CHANDLER, GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Nissan of North America and Royal Insurance Company of America (collectively referred to as "Nissan") appeal the award of workers compensation benefits to Ricardo Short. We find no error and affirm.

FACTS
¶ 2. Short was employed at Nissan. On May 25, 2000, Short suffered a back injury while unloading a courier truck. The parties stipulate that Short's injury was compensable.
¶ 3. After his injury, Short visited Dr. Walt Carnahan, a family practitioner, who provided prescription medication and restricted Short to light duty. After the *278 pain worsened, Dr. Carnahan referred Short to Dr. Craig Clark, a neurosurgeon, for further treatment. Dr. Clark diagnosed Short with a herniated disc. On July 11, 2000, after unsuccessful treatment that consisted of prescription medications and rest, Dr. Clark performed surgery on Short. On October 25, 2000, Dr. Clark released Short for work with the restriction of light duty.
¶ 4. When he arrived at Nissan on October 25, 2000, Short was informed that he was on lay-off status subject to re-hire. His status was pursuant to Nissan's leave of absence policy. The policy stated that if Short returned from medical leave within twelve weeks or less, he would be reinstated to his current or equivalent position. Short's twelve week medical leave period ended on September 10, 2000. As a result, pursuant to the leave policy, Nissan permanently filled Short's position.
¶ 5. Short then began to search for other employment. He sent out thirty resumes and visited around twenty different businesses. After a fairly thorough search, Short gained part-time employment at Oasis Imagining, Inc., for which he was paid $9.50 an hour. After working for Oasis part-time, he was hired on a full-time basis and paid $14.33 an hour, with a bonus of $1 per hour for a full forty hour week. Short's work duties include inventory control, which seldom requires lifting and when lifting is required Short receives help.
¶ 6. As of January 31, 2001, Dr. Clark determined that Short had reached maximum medical improvement and assessed a ten percent impairment rating to the body as a whole. Dr. Clark assigned no permanent restrictions to Short.
¶ 7. Short continued to complain of stiffness, pain and cramping in his back and legs. However, Short did not return to Dr. Clark for further treatment or additional pain medication. Instead, Short went to see Dr. Shawn Helmhout, another family practitioner, for pain medication, muscle relaxers, and a cortisone injection.
¶ 8. Short worked for Nissan for twelve years, ten years in Chicago and two years in Olive Branch. Prior to that, he worked at Tell Labs in Illinois in their warehouse and also in the warehouse for Micro Mart in Atlanta. While in Chicago, Short attended Prairie State Community College for three semesters and has a certificate of completion in auto mechanics, although he never worked in that area. For most of his career, Short worked as a warehouse operator, which required him to lift boxes of varying weight.
¶ 9. Short filed a claim for workers' compensation benefits. The administrative law judge awarded Short $50 per week for 450 weeks for permanent partial disability. Short appealed to the Workers' Compensation Commission. The Commission awarded Short $256.82 per week for 450 weeks. Both parties then appealed to the Circuit Court of DeSoto County. The circuit court affirmed the Commission. Nissan appeals the circuit court's decision, and the appeal has been deflected here for review.

STANDARD OF REVIEW
¶ 10. It is well settled that the Mississippi Worker's Compensation Commission is the ultimate fact-finder in cases of this kind. Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992). The findings of fact by the Commission are binding on the appellate court as long as they are supported by substantial evidence. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). This Court will reverse the Commission's order "only if it finds that the order is clearly erroneous and contrary to the overwhelming weight of the evidence." Fought v. Stuart C. Irby, 523 *279 So.2d 314, 317 (Miss.1988) (citing Myles v. Rockwell International, 445 So.2d 528, 536 (Miss.1983)). The supreme court has defined a decision as clearly erroneous when "although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." Good Earth Dev., Inc. v. Rogers, 800 So.2d 1164, 1166 (¶ 4) (Miss.Ct.App.2001) (quoting J.R. Logging v. Halford, 765 So.2d 580, 583 (¶¶ 12-13) (Miss.Ct.App.2000)). However, "where the Commission has misapprehended the controlling legal principles, we will reverse, for our review in that event is de novo." Smith, 607 So.2d at 1125.

ANALYSIS
¶ 11. The question presented is whether the Commission should have awarded Short permanent partial disability benefits of $256.82 per week for 450 weeks. Nissan alleges several errors in how the Commission arrived at this particular amount. Nissan argues that we should reverse because: (1) the Commission's order contains substantial errors of law; (2) the Commission erred with the computation of post-injury wage earning capacity, and (3) Short cannot demonstrate a loss of wage earning capacity.
I. Whether the full order contains substantial errors of law.
A. The Commission misstates the controlling statute.
¶ 12. Nissan argues that the Commission misstated the controlling statute, Mississippi Code Annotated Section 71-3-17 (Rev.2000). Nissan contends that since this is an injury to the body as a whole then Section 71-3-17(25) applies. Section 71-3-17(25) provides in part that: "compensation shall be sixty-six and two-thirds percent (66-2/3%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits set up in this chapter, and his wage-earning capacity thereafter in the same employment or otherwise[.]" (emphasis added). The Commission's order provided that compensation is "calculated by computing sixty-six and two-thirds of the difference between the claimant's average weekly wage pre- and post-injury, subject to the maximum weekly benefits, which in the case of Mr. Short was $303.35 per week." In this finding, the Commission incorrectly replaced post-injury wage-earning capacity, as stated in the statute, with actual post-injury wage.
¶ 13. Indeed, this was a misstatement of the statute. Nevertheless, we must examine how the Commission determined Short's partial disability. It appears that the Commission did not make its determination based solely on Short's actual post-injury wages. In the following sentence, the Commission discounted post-injury earnings as being "not necessarily determinative of wage earning capacity." This tends to establish that the Commission's misstatement of the governing statute was merely a scrivener's error, since the Commission actually calculated a loss of earning capacity as required by the appropriate statute. If the calculation was based solely on actual wages, the Commission would have not have addressed Short's medical impairment and pain.
¶ 14. While the Commission did misstate the controlling statute as alleged by Nissan, the Commission used the post-injury weekly wage to aid in the determination of Short's loss of earning capacity. Therefore, by determining wage-earning capacity and not basing its calculation solely on post-injury wage, the Commission did not commit reversible error on this *280 allegation of error. We find no merit to this issue.
B. Whether the Commission misapplied case law.
¶ 15. Nissan next argues that the Commission was wrong in its application of case law, in the determination of Short's loss of earning capacity. The ultimate objective of the Commission in determining post-injury earning capacity is to "determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured." Karr v. Armstrong Tire and Rubber Co., 216 Miss. 132, 139, 61 So.2d 789, 792 (1953). This Court recently restated a number of factors the Commission should use to aid it in determining earning capacity. Richards v. Harrah's Entertainment, Inc., 881 So.2d 329, 332 (¶ 7) (Miss.Ct.App.2004). In Richards, the following factors are listed:
(1) an increase in general wage levels, (2) increased maturity or training, (3) longer hours worked, (4) sympathy wages, (5) temporary and unpredictable character of post-injury earnings, (6) employee's inability to work, (7) employee's failure to be hired elsewhere and (8) the continuance of pain and other related circumstances.
Id. "The determination must be made by evaluating the evidence as a whole." Id. (citing Guardian Fiberglass, Inc. v. Lesueur, 751 So.2d 1201, 1204-05 (¶ 10) (Miss.Ct.App.1999)). In Karr, the supreme court held that the determination of earning capacity should be made "on the strength not only of actual post-injury earnings but of any other available clues." Karr, 216 Miss. at 138, 61 So.2d at 792. It is clear that while the most recent recitation of the factors suggested by Richards does not specifically mention it, actual post-injury wages are a factor to be considered.
¶ 16. The Commission's order followed the factors mentioned in Richards by holding:
Considering the record as a whole, including the nature of the claimant's impairment, the medical evidence, his pre and post-injury wages, along with other industrially related factors such as his age, education, work history, geographic location and the claimant's continued complaints of painful symptoms which impact his ability to perform his job, it is the opinion of the undersigned that claimant has sustained a loss of wage-earning capacity which entitles him to receive permanent partial disability benefits at the rate of $256.82 per week.
From this statement, the Commission thoroughly examined the evidence presented by both parties to arrive at the figure of $256.82. It does not appear that the Commission overlooked all other factors and focused on merely post-injury wages as suggested by Nissan. Instead, the Commission examined the numerous factors established by the supreme court and considered the evidence as a whole to reach its determination.
¶ 17. The Commission also found that "[w]hile we admit that post-injury earnings are not necessarily determinative of wage earning capacity, they do create a presumption of wage earning capacity commensurate with the post-injury wage." While such a presumption does exist in workers' compensation cases, this presumption has normally been applied where the post-injury wage actually matched or exceeded the pre-injury wage. Karr, 216 Miss. at 139, 61 So.2d at 792; Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 313 (¶ 20) (Miss.1997). The presumption was that no loss of earning capacity existed. This presumption could be rebutted by the *281 claimant through a number of factors to show that post-injury wages were not an accurate calculation of post-injury earning capacity. Karr, 216 Miss. at 138-39, 61 So.2d at 792. While Nissan points to several cases where the presumption applied when post-injury wages were higher than pre-injury wages, it fails to cite to any case that specifically does not allow the presumption to be used in a situation like the one here.
¶ 18. Nissan argues that the Commission improperly relied on the presumption from Karr and based its determination only on post-injury wages and not post-injury earning capacity as required by the statute. To determine if the presumption unduly influenced the Commission's decision, this Court looks at the purpose of the presumption.
¶ 19. In Walker v. Delta, 878 So.2d 113, 117 (¶ 9) (Miss.Ct.App.2003), this Court defined a presumption as a "short-cut in proof. If certain predicate facts are shown to exist, then the ultimate fact will be presumed, subject to rebuttal from the other party." Id. This Court also held that "[i]f the presumption does not arise until evidence on the entire range of issues is presented, then no presumption is in operation." Id. at (¶ 12).
¶ 20. The Commission is to look at the evidence as a whole to determine what the theoretical earning capacity was following a compensable injury, no matter what amount, if any, the injured employee may receive. Richards, 881 So.2d at 332 (¶ 7); Karr, 216 Miss. at 139, 61 So.2d at 792. Here the Commission, in its order, stated that it viewed the evidence as a whole, not just post-injury wages. Both parties presented all of the evidence to the administrative law judge before the matter reached the Commission. This suggests that they did not use an evidentiary shortcut, since "the entire range of issues had been presented" before the case reached the Commission. Walker, 878 So.2d at 117 (¶ 9). From its opinion, the Commission seems to use post-injury wages as a starting point to determine Short's wage earning capacity. There are several starting points that the Commission could use in determination of wage earning capacity, which include post-injury wages, medical impairment rating, or total disability. This does not mean that the end result will be the same as the starting point, but based on the evidence it could fluctuate much higher or lower.
¶ 21. We now look to determine if the post-injury earning capacity found by the Commission was supported by the evidence as a whole. The supreme court held that wage-earning capacity is "the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured." Karr, 216 Miss. at 139, 61 So.2d at 792.
¶ 22. Short's post-injury wage was a viable starting point according to the evidence. After being placed on layoff status by Nissan, Short diligently sought other employment. Short and his wife sent out a total of thirty resumes to various employers, and he hand-delivered twenty resumes to other possible employers. After this fairly exhaustive search, Short obtained employment at Oasis Imaging, Inc., for a weekly wage of $613.20 (when working a forty hour week, Short would receive $15.33 per hour). In this position, Short performed inventory control which required little to no lifting. When lifting was required, he was given help. On "bad days," Short's supervisor would allow him to "take it easy." From these facts, the amount of wages Short received from Oasis Imaging, Inc., was a viable starting point for the determination of post-injury earning capacity.
*282 ¶ 23. The Commission's order stated that it took into account age, education, work history, geographic location and the claimant's continued complaints of painful symptoms which impact his ability to perform his job in determining loss of wage-earning capacity. Short was forty-two years old at the time of the hearing and he lived in Olive Branch. He had received three semesters of schooling at Prairie State Community College and a certificate of completion in auto mechanics, though he worked primarily in warehouses for most of his career. Dr. Clark did not assign any work restrictions, but did assign a ten percent impairment rating to the body as a whole. From this evidence, the Commission found a loss of earning capacity.
¶ 24. This Court finds that the Commission viewed the evidence as a whole and made an accurate finding of post-injury earning capacity. The Commission accurately determined what wage "would of been paid in the open labor market under normal employment conditions to claimant as injured." Karr, 216 Miss. at 139, 61 So.2d at 792. This Court finds that the calculation of a loss of earning capacity of $303.35 was supported by substantial evidence. This issue has no merit.
II. Whether Short can demonstrate loss of wage earning capacity
A. Failed to return to employer
¶ 25. Nissan alleges that Short failed to return to work. Therefore, Short is not entitled to a finding of a loss of wage earning capacity. Nissan cites Lane Furniture Indus., Inc. v. Essary, 919 So.2d 153 (Miss.Ct.App.2005). Lane held that the claimant failed to establish total permanent disability because she did not show four things:
(1) that she was medically unable to return to Lane, so as not to require that she seek re-employment there, (2) that any restrictions placed upon her employment were not subject to reasonable accommodation at Lane, (3) that Lane failed or refused to re-employ her, and (4) that considering any restrictions, she made reasonable efforts to seek similar or other employment.
Id. at 159 (¶ 23). This places the burden of returning to the employer upon the employee for a finding of total disability, instead of requiring the employer to seek out the employee.
¶ 26. The present case differs from Lane. First, Short did not seek total permanent disability, only partial permanent disability. Second, Short returned to Nissan on October 25, 2000. Upon returning to work with light duty restrictions, Short was informed by Nissan that subject to its leave-of-absence policy he was placed on lay-off status subject to rehire. Lastly, Short found other employment, albeit at a lower wage, after he was placed on layoff status by Nissan. Therefore, Short has shown the requisite effort to seek employment from Nissan and other sources to preclude a finding of no partial permanent disability. This issue has no merit.
B. Whether the Commission's finding of permanent partial disability is supported by substantial evidence
¶ 27. Nissan's final argument is that there is insufficient evidence to support the award. Nissan correctly cites the proposition that "[i]ncapacity to earn wages and the extent thereof must be supported by medical findings." Greenwood Utilities v. Williams, 801 So.2d 783, 791 (Miss.Ct.App.2001). Suggesting that the medical evidence doesn't support the finding of the Commission, Nissan cites Kemper Nat. Ins. v. Coleman, 812 So.2d 1119 (Miss.Ct.App.2002).
*283 ¶ 28. In Kemper, this Court affirmed an order of the Commission that denied permanent partial disability for a mental injury. Id. at 1128 (¶ 29). The physician did not assign any impairment to the employee beyond that of skittishness about future bosses, and the administrative law judge called such an impairment as "within the realm of normal, healthy skepticism about life in any workplace." Id. at 1127 (¶ 26).
¶ 29. The case before this Court is quite different. Dr. Clark, assigned a permanent ten percent impairment rating to the body as a whole, but did not impose permanent work restrictions on Short. Short's situation is much more akin to the facts in Hall of Mississippi, Inc. v. Green, 467 So.2d 935 (Miss.1985). In Hall, Green suffered a back injury that required surgery. Id. at 936. The doctors assigned Green a fifteen percent impairment rating, but testified that Green should have been able to perform the same duties he did before the surgery. Id. at 937. The testimony of the doctors in Hall is very similar to the deposition of Dr. Clark in that the patient received an impairment rating, yet no work restrictions. Both Green and Short testified they suffered continued pain from the injury.
¶ 30. In Hall, the employer challenged the finding of disability from the back injury. The supreme court held that "disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability." Id. at 938. It held the assignment of the impairment rating was medical testimony to support the finding. Id. In both Green and Short's cases, the Commission found that pain affected the ability of the employees' earning capacity, making it more difficult to find future employment. Hence, there was substantial evidence to justify a finding of partial permanent disability.
¶ 31. Nissan also argues that there was insufficient evidence to support the Commissions's finding of "complaints of painful symptoms which impact his ability to perform his job." We disagree. Indeed, there was substantial evidence that Short continued to experience pain. Short testified of cramping in his leg and foot, as well as, good and bad days at work. Short's wife testified that the pain continued at home and caused Short to wake up during the night due to cramping. Dr. Clark testified at his deposition that, while Short enjoyed "good pain relief," he still encountered slight and occasional pain. The record provides more than enough evidence from which the Commission could base its finding.
¶ 32. Accordingly, this Court finds that there was substantial medical evidence to support the Commission's finding of a partial permanent disability. Therefore, this issue is without merit.

CONCLUSION
¶ 33. We find that the award of permanent partial disability payments of $256.82 for 450 weeks is supported by the evidence. Finding no reversible error, this Court affirms the decision of the Circuit Court upholding the award of the Mississippi Workers' Compensation Commission.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.